## WEST *et al. vs.* COLQUITT, governor.

[Blandford, Justice, being disqualified, did not preside in this case.]

Where one has been arrested and given bond to answer for a criminal offence, the sureties on such recognizance are not discharged by the subsequent arrest of their principal on another charge, and the giving of a bond, with other sureties, to answer therefor. If the state should keep him in continued custody, so as to render his production easy for it, but impossible for the sureties, they would be relieved; but the mere temporary restraint prior to the giving of the second bond would not work a discharge.

October 9, 1883.

Criminal Law. Bail. Principal and Surety. Before Judge WILLIS. Taylor Superior Court. April Term, 1883.

Reported in the decision.

A. A. CARSON; J. H. HOLSEY; W. S. WALLACE & SON, for plaintiffs in error.

T. W. GRIMES, solicitor general, by J. M. McNEILL, for defendant.

JACKSON, Chief Justice.

The single question which this record makes is, whether the sureties on a recognizance to produce the body of the prisoner to answer for one offence are discharged by a subsequent arrest on another offence, and recognizance with different sureties for appearance thereunder?

In *Buffington vs. Smith, governor*, 58 *Ga.*, 341, this court held that where the state held the principal in her penitentiary, she could not forfeit the bond of the sureties to produce his body to answer another indictment, for the obvious reason that she alone could produce him and try him, if she wished to do so. But this question is quite different from that then decided. Of course, if the state already has the man in her power, she cannot make another produce him; nor can she, with any sort of justice, make that other pay her for not doing what she can easily do, but the other cannot do at all. But the question here is, whether, when two sets of sureties on two several recognizances or bonds, for two distinct offences, obligate themselves to produce the defendant to answer each several offence, and one offence is committed after the other bond has been taken, and the defendant is arrested thereunder, and new bond or another bond is given on the second arrest, for the second offence, the question is, I repeat, whether in such a case the first sureties are discharged by the second arrest for a different offence and the bail thereon?

Certainly no such ruling has been made by this court to that effect, nor are we aware of any case in the English or American courts to that extent. It would be strange if any American court should so hold, because the right to give bail on reasonable terms is a right guaranteed by the constitution of the United States, in Article VIII of the amendments to that constitution. Code, §5313. The

same right is guaranteed in the IXth paragraph of the bill of rights in the Georgia constitution.  Code, §5001.

The meaning of these fundamental provisions in the organic laws of the American Union and of this state is, that a party accused of any and every bailable offence shall have the inestimable privilege of giving security for his attendance at court, and shall not be imprisoned, if he can give security in a reasonable sum of money for his appearance.  The guarantee is not that he may give such security for one or for two offences, but for every offence he may commit, so long as he has friends who are willing to bind themselves and their property to assure his presence for trial.  But if the re-arrest and the new trial on a second offence discharged the sureties on the first bond, no court or sheriff or other officer of the law could ever permit, in justice to the state, a second bond which would thus annihilate the first.  Especially would he not do so, if the first were a bond to answer for a heinous offence, in a correspondingly large sum of money as penalty, and the second in a trifling bond, for a trivial offence.

Nor is the answer a good one, that the officer must bring all parties before him and renew all the bonds by having all the sureties before him.  Such proceeding would take time; sureties might be scattered, and before they could all be got together, the defendant would be in jail, and his constitutional right would be annulled to the extent of that imprisonment.  If it be answered again, that no officer dare delay accepting bail when tendered under these constitutional provisions, and the right to give bail would still exist in full force and be unimpaired, then see how disastrous the operation would be for the interests of the state and the people.  Whenever one was bailed to answer for a grave crime, in a heavy penalty, all he would have to do would be to commit a light offence and give bail to answer that in a small sum—for it must not be excessive, under the constitutions, but proportionate to the offence—and, *ipso facto,* the bail for the grave offence are discharged,

and the principal is beyond seas, having only to pay a small trifle. The law is sense, and this result is nonsense. It cannot be law, any more than nonsense can be sense, so far as the American and Georgia constitutions are of force.

When the bail agree to produce their principal at court, they do so in full view of the fact, that the principal may commit another offence, and may give bail for that, under another arrest; and that, because they have agreed to produce his body to answer for the first offense, the state does not bargain with them not to arrest him if he sins again, and then, that her highest law guarantees to him the right to give other bail to answer that. The state does an act perfectly lawful, when she so arrests him for a second offence. If she should keep him in her own custody, of course the bail in the first case would be discharged; because she could produce him, but they could not; and it would be against all reason to punish the sureties for what she did, and by so doing prevent them from keeping their bargain with her, and when all reason for the bail ceased, because she had the man in her own jail or her own penitentiary. But when, under a right the man exercised, other people had enough faith in him to bail him for another offence, to be answerable to court, then two sets of sureties contract with the state to produce him for two offences. If they conflict, and one is tried and imprisoned by the state, then, as in *Buffington's* case, the sureties are discharged, because the state has the principal in her own custody, and can produce him and try him on the other offence, if she wishes to do so. And whichever case is tried first, if it result in imprisonment, the sureties for the other are discharged; but so long as the state has not the man in her custody, the bail in each case is bound. The mere arrest, discontinued by the bail in the second case, does not annul the first bond. The moment the principal is released on other bail, that bond is operative again. Momentarily it may have been stunned by the second arrest, and would remain insensible as long as that arrest lasted, but the in-

stant the principal breathed free breath again, under the great constitutional guarantees of easy bail, that which he gave before to be free revives by the new breath of the second bail, and as both gave him liberty, both are bound for the exercise of that liberty, on the terms each bargained for· and nothing short of the continued custody of the state can relieve either, and that only so long as it continues. Neither of the cases cited by plaintiff in error conflicts with these views. 27 *Ga.*, 311, was bail on civil process, and actual imprisonment worked the discharge of the sureties; 34 *Ga.*, 25 and 206 were cases where the principals were in the military service during the war, and 540 of the same was where, slavery having been abolished, the master was relieved as bail for his former slave  24 American Reports, 26, is the case of imprisonment of the principal under the military of the United States.   In ⁕32 American⁕ the principal was imprisoned in another county for another offence. It is a Texas case, just like the *Buffington* case in this state, *supra*.   In 44 Texas, 11, is the case of a second arrest and new bail on the same indictment.

Judgment affirmed.

⁕See 32 Am. R., 571.