## RUPERT ET AL. v. THE PEOPLE.

1. RECOGNIZANCE, BY WHOM APPROVABLE.

Where a prisoner is committed by an examining magistrate in default of bail, the sheriff has no power to approve a bond and release the prisoner from custody. In such a case, the power to let to bail is conferred upon a judge or two justices of the peace.

2. SAME—APPROVAL BY UNAUTHORIZED OFFICER.

A justice of the peace having committed a prisoner in default of bail in an amount required, the sheriff afterwards approved a bond and

released the prisoner; *held*, that the recognizance, having been taken and approved by an officer without authority, was void, both as a statutory bond and as a common law obligation.

*Error to the County Court of Baca County.*

This is an action brought upon a criminal recognizance, in the name of The People, against the plaintiffs in error. So much of the complaint as is necessary to a proper understanding of the question presented for our consideration upon this review is as follows:

"That on the 24th day of January, A. D. 1891, one Henry J. Rupert was examined before S. W. Cole, Esq., a justice of the peace, within and for the county of Baca and state aforesaid, upon a charge of grand larceny; * * * and upon said day the said charge was inquired into by and before the said S. W. Cole, who did then and there, sitting as a justice of the peace, as aforesaid, for the trial of said charge, order and require the said Henry J. Rupert, to give bail with good and sufficient surety in the sum of two hundred dollars for his appearance at the next term of the district court in and for Baca county, conditioned according to law. And the said Henry J. Rupert, failing to give such bail as required, in default thereof was duly committed to the jail of said county by the commitment issued by the said justice, to be there confined until the said bail should be by him given, or he be discharged according to law. * * *

"That afterwards, to wit, on the 31st day of January, A. D. 1891, while the said Henry J. Rupert was confined in default of bail as aforesaid, the defendants above named, R. W. Devinney, Charles M. Gordon and John H. Rupert, for the purpose of securing the discharge of the said Henry J. Rupert from the said jail, as sureties of and with the said Henry J. Rupert, signed, executed and entered into a recognizance for the sum of two hundred dollars, as required by the said S. W. Cole, justice of the peace. * * *

"The conditions of said recognizance were and are such

that if the said Henry J. Rupert shall personally be and appear at the district court of the third judicial district of the state of Colorado, sitting in and for said county of Baca, on the first day of the next term thereof, and from day to day thereafter, and remain at and abide the order of the said court, and not depart the court without leave, then and there to answer to the said charge of grand larceny, * * * then and in that case the said recognizance to become void, otherwise to be and remain in full force and effect. * * * And the said recognizance was duly signed by said sureties. * * * And the said bond was indorsed as follows: 'Approved by me January 31, 1891. Signed R. C. Winecup, Sheriff of Baca County.'

" That after the execution, approval and delivery of said bond or recognizance to the said sheriff, who then had and held the said Henry J. Rupert in custody under and by virtue of the commitment issued and delivered to him by the said S. W. Cole, justice of the peace, released him, the said Henry J. Rupert, from custody and returned the recognizance to the clerk of the district court in whose custody it now is. * * *

" That afterward, on the 4th day of June, A. D. 1891, on the second day of said term of said district court, the said Henry J. Rupert * * * failed and neglected to come into court," etc., and thereupon the said recognizance was declared forfeited. The plaintiffs in error, R. W. Devinney and Charles M. Gordon, appeared and demurred to the complaint upon the grounds that it does not state facts sufficient to constitute a cause of action; and, *second*, there is a defect of parties plaintiff.

This demurrer was overruled, and, they electing to stand upon their demurrer, judgment was rendered against them for $200, the penalty of the bond and costs. To reverse this judgment they prosecute this writ of error.

Mr. A. F. Hollenbeck, for plaintiffs in error.

No appearance for the People.

MR. JUSTICE GODDARD delivered the opinion of the court.

It appears upon the face of the complaint that the recognizance upon which the right of action is predicated was approved by the sheriff in a case where the prisoner was committed to the county jail in default of bail. Under these circumstances, the sheriff has no authority to approve a bond and release a prisoner from custody. In such case, the power to let to bail is expressly conferred upon a judge or two justices of the peace, by sec. 981, Gen. Stats., 1883, (Mills' An. Stats., sec. 1487,) which enacts :

" Where any person shall be committed to jail on a criminal charge for want of good and sufficient bail, except for murder or other offense punishable with death, or for not entering into a recognizance to appear and testify, any judge or any two justices of the peace may take such bail or recognizance in vacancy, and may discharge such prisoner from his or her imprisonment."

The recognizance, therefore, having been taken and approved by an officer without authority, is void, both as a statutory bond and as a common law obligation. *People v. Mellor*, 2 Colo. 705 ; *Haney v. People*, 12 Colo. 345 ; *State v. Winninger*, 81 Ind. 51 ; *State v. Russell*, 24 Tex. 505 ; *State v. Kruise*, 32 N. J. Law, 313 ; *State v. Young*, 56 Me. 219 ; *Dickenson v. State*, 20 Neb. 72 ; *Harris v. Simpson*, 14 Am. Dec. 101 (4 Littell, 165) ; *Powell v. State*, 15 Ohio, 579 ; *Williams v. Shelby*, 2 Ore. 144.

As was said in the case of *Haney v. People, supra :* " Without discussion, and without analysis of the authorities, we shall assume that if, in a case like the one at bar, bail be taken by a court having no jurisdiction, or by an officer destitute of legal authority, the instrument, whether denominated a ' recognizance ' or ' bond,' is void as to both principal and surety, and that such fact, when shown by the surety, constitutes a good defense to an action against him for the penalty."

The only cases that we have been able to find, that hold a

recognizance so approved good as a common law obligation even, are *State v. Cannon*, 34 Ia. 325, and *Dennard v. State*, 2 Ga. 137.

Judge Freeman, in his note to the case of *Harris v. Simpson*, *supra*, in speaking of these cases, says: "The soundness of this doctrine is very questionable. Since the magistrate had no jurisdiction to admit to bail in such a case, the sheriff had no right to release his prisoner upon a bond so taken, and if he did so it was an escape; and since there is no distinction between voluntary and negligent escape in criminal matters, it was the sheriff's duty immediately to retake the accused. Surely a breach of duty on the part of the sheriff could not furnish a valid consideration for a bail bond. It would certainly be contrary to the policy of the law to enforce an obligation founded upon such a consideration."

And as was said in *Dickenson v. State*, *supra*: "To hold that an unauthorized person may accept a recognizance running to the state, which will bind the person entering into it, is to hold that one private unauthorized person may make another the debtor of the state, a proposition illogical in theory and dangerous in practice."

It is clear, upon reason and authority, that the recognizance upon which this action is brought was void, and is not enforceable against the plaintiffs in error; and, its invalidity appearing upon the face of the complaint, the court below erred in overruling the demurrer and entering the judgment complained of. This conclusion being decisive of the case, we need not notice the further objection to the right of defendants in error to bring the action. For the foregoing reasons the judgment is reversed.

*Reversed.*


MR. JUSTICE ELLIOTT dissenting.

The "loopholes of the law," by which persons charged with crime evade trial, or escape punishment after fair trial and conviction, are a reproach to the jurisprudence of many

American states. Not many miscarriages of justice have occurred in Colorado; and these have been occasioned by improvident legislation as well as by a few hasty judicial decisions.

A person accused of crime is entitled to the benefit of every reasonable doubt as to every question of law or fact bearing upon the question of his guilt or innocence. As was well said by Chief Justice Hayt in *Graves v. The People*, 18 Colo. 174: "The innocence of every accused person must be presumed until his guilt is established according to the law of the land, and beyond all reasonable doubt. The rules governing the trial of criminal cases are the outgrowth of experience, and embody the wisdom of centuries. A conviction obtained in cases where a substantial compliance with these rules has not been had cannot be allowed to stand." But this humane rule in favor of life and liberty should not be extended to preliminary proceedings so as to prevent a fair trial, nor to subsequent proceedings so as to prevent punishment in case of conviction *after* a fair trial. Society has rights and interests in the administration of the criminal law as well as the accused.

It is urged that the law in respect to sureties is *stricti juris*. This is true to the extent that the surety is not to be held liable beyond the terms of his obligation; but there is no reason for holding the rule more stringent in respect to recognizances and bail bonds in criminal proceedings than in case of other bonds and undertakings. Neither the execution nor enforcement of an appearance bond can have any bearing upon the question of the guilt or innocence of the accused. It is not an unfair rule of interpretation which holds parties liable upon a contract to which they have voluntarily given their assent, upon a valid consideration, and for a lawful purpose, according to the true intent and meaning of the contract, and according to their own understanding of its conditions.

Let these familiar principles be applied to the present case. From the record it appears that the accused was in custody

under lawful process upon a charge of grand larceny. Being thus in custody, he, with plaintiffs in error as sureties, for the purpose of securing his release, voluntarily entered into the bond or recognizance, fixed by lawful authority, and delivered the same to the sheriff for a lawful purpose in good faith; and thereupon the accused was released; but he failed to appear according to the terms of his bond, and the same was declared forfeited. Suit being brought upon the forfeited recognizance, the court below rendered judgment against the sureties.

The foregoing facts being confessed by demurrer, was it error for the county court thus to render judgment?

Counsel for plaintiff in error contends as follows: "An alleged bond or recognizance, taken or entered into before a court or an officer not having authority to take such bond, *is an absolute nullity*, and no action can be maintained on such alleged bond or recognizance." In support of this proposition decisions are cited from several different states, among others, two opinions by this court. *People v. Mellor*, 2 Colo. 705; *Haney v. The People*, 12 Colo. 345.

The *Mellor Case* was a proceeding by *scire facias* upon a recognizance of bail, or appearance bond, entered into before justices of the peace. The defendant pleaded: *first, nul tiel record; second*, that the bail bond was void in that the affidavit upon which the accused was arrested did not properly charge the crime of burglary, that being the charge upon which the accused was held to bail; *third*, that there was no such recognizance remaining of record as was mentioned in the *scire facias*, in that the justices who took the recognizances did not certify the same to the district court as the statute requires.

The second plea was demurred to, and the transcript shows that the demurrer was overruled, and that plaintiffs in error, electing to abide by the demurrer, judgment of *nil capiat* was rendered in favor of defendants. (The statement in the published volume erroneously shows that the demurrer was " sustained.")

The *Mellor Case* was reviewed in this court solely upon the ruling and judgment upon the demurrer to the second plea. But the opinion commences thus : " Conceding that sureties in a recognizance may show that the court or officer before whom the recognizance was acknowledged had no authority in that behalf, the second plea is clearly insufficient."

The question whether sureties may show as a defense that the court or officer before whom the recognizance was acknowledged had no authority to take the same, was not before the court in the *Mellor Case*. Hence, such expression at the commencement of the opinion cannot be accepted as an authoritative declaration of the law upon that point. In this connection the language of Chief Justice Marshall in *Cohens v. Virginia*, 6 Wheaton, 97, has peculiar force : "It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles, which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom investigated." Quoted in *Wadsworth v. U. P. Ry. Co.*, 18 Colo. 610.

The opinion in the *Haney Case* is subject to the same criticism as the *Mellor* opinion. It contains the following : " Without discussion, and without analysis of the authorities, we shall assume that if, in a case like the one at bar, bail be taken by a court having no jurisdiction, or by an officer destitute of legal authority, the instrument, whether denominated a ' recognizance ' or ' bond,' is void as to both principal and surety, and that such fact, when shown by the surety, constitutes a good defense to an action against him for the penalty."

The proposition thus *assumed* in the *Haney* opinion was not really necessary to a decision of the case; it evidently was not fully *examined;* indeed, the opinion shows that it was *assumed without discussion, and without analysis of the authorities.* The *Haney Case* furnishes a complete illustration of the truth of the maxim and observations stated by Chief Justice Marshall, *supra.* What renders the illustration the more complete is the fact that the *Mellor Case,* in which similar views were *conceded* without being necessary to the decision, and, hence, presumably without complete investigation, is the first case cited in support of the *Haney Case.*

The second point of the syllabus in the *Haney Case* states the real question examined, considered and decided by this court. To a certain extent it is authority for holding the bond in the present case not void, but valid. The court did not decide in the *Haney Case* that the bail bond was void, but, on the contrary, held it valid, notwithstanding the prisoner was discharged before the bond was approved by any one having authority so to do. The concurring opinion in the *Haney Case* puts the liability of the surety squarely upon the ground that the accused was *in custody under lawful process,* that the bond was *voluntarily executed* with full knowledge of its contents and *for a lawful purpose,* that is, to secure the release of the accused.

The case of *Abbott v. Williams,* 15 Colo. 512, was much considered. That case states the general rule to be that "a voluntary obligation founded upon a valid consideration is enforceable according to its terms and provisions, unless the same be against public policy, or forbidden by statute;" and that was the very point upon which the decision of the case turned.

In *People v. Meighan,* 1 Hill (N. Y.) 298, Mr. Justice Cowen of New York, one of the brightest jurists of that great state, delivering the opinion of the court, said: "At the common law we might have *saved the good, while we rejected the bad part of the bond;* or, perhaps it might have

*been valid for the whole.*" In that case the bond was held bad because, as stated in the opinion, the statute of New York " absolutely destroys all and every part of any bond, taken by any officer by color of his office, in any other case or manner than such as are provided by law."

In Tennessee a much more wholesome statute prevails, to the effect that " a bond good at common law is likewise a good statutory bond." *State v. Clark,* 1 Head, 372. In Mississippi, also, the statute provides that " all official bonds shall be valid and binding, in whatever form they may be taken, except so far as they may be conditioned for the performance of acts in violation of the laws or policy of the state." *Boykin et al. v. The State,* 50 Miss. 378.

Fortunately, in this state there is no statute providing that bonds taken by an officer in any other case or manner than such as are provided by law, shall be either void or voidable ; nor is it against the policy of the law of this state for a sheriff to take and approve appearance bonds in criminal cases. The policy of our laws has long been quite the contrary ; they expressly provide that sheriffs may take and approve such bonds in the most important cases where bail bonds are allowable. In this state statutes have been in force for more than a quarter of a century authorizing sheriffs to take bail and release prisoners *after* indictment by the grand jury in the district court, and, also, *after* conviction, upon *supersedeas* being allowed by the supreme court. The sheriff is authorized to take recognizances in such cases without their being approved by any court or other officer, and to certify and return the same to the district court ; and the statute declares that recognizances so taken shall be valid and binding, and shall not be set aside or adjudged insufficient for want of form, and that proceedings may be had thereon in case of a breach according to the course of the common law. Rev. Stats., (1868), pp. 239, 247; 1 Mills' An. Stats., secs. 1455, 1479.

In view of the foregoing statutes, and the practice obtaining thereunder, it is not strange that a sheriff should con-

sider himself authorized to take and approve an appearance bond executed by a person committed by an examining magistrate. No good reason can be assigned why a sheriff should be authorized to take and approve an appearance bond *after indictment and arrest, upon a capias from the district court, and also after conviction, upon supersedeas from the supreme court,* which does not apply with even greater force to the case of bonds fixed by examining magistrates. The distinction is arbitrary and probably accidental; and while the statutes should be observed as they are written by those having custody of prisoners, yet if the accused, after commitment by a justice of the peace, enter into a voluntary appearance bond, and the same be taken by the sheriff, and the prisoner be discharged, there can be no good reason why the bond should not be held good as a *common law bond* and as a valid obligation, the same as in civil cases. An appearance bond executed by a person in custody under *lawful process* cannot be said to be executed under *duress*, for, if the mere fact of imprisonment under such circumstances be regarded as *duress*, that would invalidate every appearance bond.

When a person in custody under lawful process voluntarily executes an appearance bond with sureties, in a sum fixed by lawful authority, and thereby regains his liberty subject to the lawful conditions of his bond, there is no reason why he and his sureties should not be held liable in case he makes default, especially where the taking of such bond is not against public policy nor forbidden by statute. In such case, the accused having received the consideration for which he gave the bond, to wit, his release from imprisonment, both he and his sureties should be held liable upon every principle of law and justice.

There is no force in the contention that the rule of construction should be more strict in respect to appearance bonds than to statutory bonds in civil cases. The execution of the appearance bond has no bearing upon the guilt or innocence of the accused. It is for his benefit, and in no

way prejudicial to his rights. It certainly gives him the better opportunity to prepare for his defense, and generally puts him in a better light before the court and jury, by showing that others have confidence in him, and that he is willing to take the responsibility of standing trial.

In Murfree on Official Bonds, it is said: "While it is generally true that official bonds must conform to the statute by which they are authorized, and, if they do not, they are either invalid altogether, or valid only as common law bonds;" and further the author adds: "All bonds, in whatever form they may be taken, are valid, unless they are conditioned for the performance of acts which are in violation of the laws or policy of the state." Murfree is also authority to the effect that "all bonds are official which are prescribed by statute." Secs. 36, 41.

In *Dennard v. The State*, 2 Ga. 137, the action was upon an appearance bond for an indictable offense, and the contention was that the paper purporting to be a recognizance was invalid, because not taken by any person authorized by law to take a recognizance or admit to bail in criminal cases. But upon a review of the case the supreme court of Georgia said: "Technically this is not a recognizance, because not an acknowledgment of a debt of record, nor before a judicial officer. It is signed and sealed and acknowledged before George W. Collier, not being a magistrate. The bond is taken under the common and statute law of England, which entitles a party arrested to give bond with security for appearance. It is in fact a bail bond;—a contract between the securities and the state, and as such good."

In *State v. Cannon*, 34 Ia. 322, a bail bond was approved by an officer without authority, and the prisoner was discharged. Action was brought upon the bond, and upon appeal the supreme court of Iowa declared that the officer taking the bond "had no authority under the statute to accept the recognizance, and, as a statutory bond, it is inoperative.

"But, though not binding as a statutory bond, it does not

follow that the defendants should be discharged of all liability thereon. True, the remedies thereon, which are purely statutory, cannot be enforced. It does not become a lien upon the property of the obligors from the time of filing in the office of the clerk of the district court, under the provisions of chapter 234 of the revision.

" But it is a bond, voluntarily executed by defendants, at the request of the accused, and for his benefit. Under it, he has been discharged from custody. He has derived all the advantages which he could have had under a bond taken in the manner prescribed by the statute. And, although he could not have *required* the acceptance of the bond, and his discharge thereunder, still, having been released in consequence of the bond, there is no legal reason why the obligors thereon should not discharge their voluntarily assumed obligation."

It may be that the current of authority is contrary to the views above expressed, taking the number of opinions as the test. But there is sometimes great difference between the current of authority and the weight of authority. The weight of authority depends upon the better reasoning, and not upon the number of opinions. The current of authority may be very weak, especially where the opinions have no better basis than some general expression in previous opinions not warranted by the very point presented for determination. An opinion in which some legal point, not in issue, is *conceded*, as in the *Mellor Case*, or *assumed without discussion and without analysis of the authorities*, as in the *Haney Case*, has little or no weight upon such point. It is sound reasoning, based upon complete investigation, which gives weight to judicial opinions.

In construing and determining liability upon lawful contracts, the intention of the parties is generally the controlling principle. Plaintiffs in error having voluntarily executed the bond in question for a lawful purpose and for a valid consideration, and having thereby secured the release of the accused from lawful imprisonment, must be held to have intended to render themselves liable for the penalty of the bond in case

the accused should make default by not appearing according to its conditions. If appearance bonds were to be held void whenever they are found to be irregular, the proceeding of bailing prisoners would be the veriest farce, since in every instance there is liable to be some deviation from the statute. It is fair to presume that, at the time of executing the bond, plaintiffs did not dream of escaping liability on account of some irregularity not affecting the substance of their obligation. To allow them to escape, under the facts disclosed by this record, is one of those unfortunate slips in the administration of the law that brings the law into disfavor, and militates strongly against good government in this country. The slip is all the more unfortunate, because altogether unnecessary. It would be avoided by holding the parties to the fair terms of their contract, as in other cases.

As we have seen, the question presented by this case is *res nova* in this state. There are really no precedents requiring the bond in this case to be held void. The *Mellor* and *Haney Cases* certainly do not furnish such precedents, but rather the contrary. The course of decisions in this state, with few exceptions, has been favorable to a rational, rather than a technical and arbitrary, administration of the law. It must be a matter of regret, therefore, that this case should be added to the few cases constituting such exceptions. It is unfortunate that this case should not have been investigated, weighed and determined so as to hold the bond effective, without reference to mere extrajudicial expressions in former opinions of this court, or the ill-considered opinions of other courts. But since a majority of the court have felt constrained to take a different view, it is to be hoped the legislature may provide a remedy like the Tennessee or Mississippi statutes, above referred to.

The reason and justice of the principles attempted to be set forth in this opinion, supported, as they are, by the Georgia and Iowa decisions, have given the writer confidence to express his own convictions of what the true rule of the law is in a case of this kind, and thus to conclude that the judgment of the county court should be affirmed.