Wilson, J.
This was an action in the name of the people to recover on a forfeited recognizance in a criminal case. Harry C. Hus *272 ton, one of the plaintiffs in error and principal in the bond, was with several other parties arrested on several criminal charges, and brought before a justice of the peace of Otero county for preliminary examination, on June 30, 1896. He was held to appear at the district court of the county on the first day of its next regular term, commencing on November 9, following, and required to give bail for such appearance in the sum of $250 on each of three separate charges. On September 4, following, he executed the three several recognizances required, with R. Phillips and R. W. Patterson, his codefendants herein, as sureties. On the convening of the district court, on the second day thereof, Pluston having failed to appear, his recognizances were declared forfeited, and an order to that effect was made and entered of record. On November 11, following, the district attorney filed a petition praying the issuance of a scire facias against the sureties, requiring them to show cause why judgment should not be rendered against them for the sum of $250, the amount of the bond in each case, and costs. The scire facias was issued, returnable January 11, 1897, and was served upon the sureties November 18,1896. The district attorney filed an information against Huston in each of the three cases in which he was bound over, and also a fourth information against him for another and distinct offense. A capias was issued in this fourth case, and upon this last capias, by the aid of extradition papers from the governor of Colorado, Huston was, at the instance of the authorities of Otero county, arrested in Kansas, and returned to the custody of the sheriff of Otero county on December 14, 1896, and thereafter so remained continuously and was in such custody at the time the judgment was rendered in this cause. It is admitted that he was not arrested and extradited upon a capias or other process issued upon any one or more of the three charges for which the bail had been given and declared forfeited. The defendant sureties answered, and pleaded in substance that immediately after the forfeiture of said bond was declared, they took steps to have Huston apprehended and surrendered to *273 the sheriff of Otero county, and that after Huston’s return to the custody of the said sheriff, they surrendered him to the sheriff, and took from the latter an acknowledgment in writing of such surrender; that all of this occurred before the recovery of judgment against them upon the scire facias to show cause. They further answered that they were ready and willing to pay all costs that had accrued in the cases wherein they had entered into recognizances for the appearance of the accused. It is admitted that Huston was extradited and returned to the custody of the sheriff solely at the instance of the official authorities of the county, and not at the request or instance of these sureties. Judgment was rendered against the sureties for the full amount of the bond in each of the three cases and for costs of suit.
The determination of the controversy turns upon the construction of General Statutes, sec. 969, which reads as follows : “ In all cases of bail for the appearance of any person or persons charged with any criminal offense, the security or securities of such person or persons may at any time before judgment is rendered upon scire facias to show cause why execution should not issue against such security or securities, seize and surrender such person or persons charged as aforesaid, to the sheriff of the county wherein the recognizance shall be taken, and it shall be the duty of such sheriff on such surrender and the delivery to him of a certified copy of the recognizance by which such security or securities are bound, to take such person or persons so charged as aforesaid into custody, and by writing acknowledge such surrender, and thereupon the security or securities shall be discharged from any such recognizance upon payment of all costs occasioned thereby.” It is somewhat difficult to determine upon what basis or theory the judgment was rendered. Counsel for the people contend that all of the costs and expenses of the extradition are properly chargeable as costs against the sureties on these three several bonds, entered into for the appearance of Huston at the district court, and as this alone amounted to |736.*30, the judgment should be sustained on that account. *274 The judgment was, however, rendered for the full amount of each bond, and for the costs of the scire facias proceeding in each, seeming therefore to rest apon the theory that there had been an entire forfeiture of the bond, from which the sureties were not relieved in any respect by the surrender of the principal. In either event, however, the judgment was erroneous. The right of sureties to obtain their discharge and exoneration from a forfeited recognizance is statutory. It is absolute, when the requirements of the statute are complied with, and not dependent upon the favor or indulgence or discretion of the court. Nor can they be divested of this right by the action of the state in apprehending and returning the absconding principal in the bond upon criminal process issued upon a criminal charge entirely distinct from that in which the recognizance was given. The sureties in this case might have been able to have seized and returned to the custody of the sheriff the person of Huston, without being compelled to bear the burden of expense which officials might see fit to incur under process issued in an entirely distinct action. The state, of course, had a right at any time to have seized Huston and held him to answer to the charges in which the forfeited recognizances had been given, and in such case the sureties might with some reason have been called upon to bear all expenses, but this was not done in this case. He was arrested and returned upon a capias issued on an information preferring against him another charge, for his appearance to answer which these sureties were in no wise responsible.
The statute says positively that if before judgment is rendered upon the scire facias, the sureties deliver to the sheriff the body of the absconding principal, and make payment of the costs incurred in the proceeding, — that is, primarily the costs incurred in the forfeiture and the issuance of scire facias thereon, — they shall be exonerated and discharged from the recognizance. It cannot be read into the statute that under any circumstances are they liable to pay any costs incurred under any information or indictment except in those in which they have entered into recognizances. In this case, if the officer *275 liad acted under a capias issued upon the information based upon the charge for the appearance to answer which the recognizances had been given, as well as that issued upon the fourth information, an entirely different case would be presented, but this is not even claimed. The arrest and return were professedly solely upon the capias issued on the fourth information. Any other view would seem to be based upon the theory that the state desires to punish the sureties of absconding criminals, as well as the criminals themselves. This of course is not true. The state prefers the trial of the accused, and if found guilty, his punishment, and this is the policy of the statute before us, and similar statutes.' It is held out as an encouragement 'to the bail to secure the return of the principal that they will be exonerated and relieved from liability in such case.
Counsel for the people contend, however, that there was no such delivery to the sheriff as is required by the statute. The accused was on the 14th of December in the custody of the sheriff in the county jail, the place where the statute said' he should be in order to entitle the sureties to be discharged. What more, then, could the sureties do than make a formal surrender ? They had no authority to take him out of jail and deliver him back to the sheriff, even if such an idle and useless ceremony should have been necessary. Moreover, the prisoner was in custody by the act of the state itself, and it certainly cannot be contended that sureties could be deprived of their right to be exonerated by the power which was seeking to inforce the forfeiture. In Buffington v. Smith, 58 Ga. 341, it was held that where the state held the principal in her penitentiary, she could not forfeit the bond of the sureties to produce his body to answer another indictment, for the obvious reason that she alone could produce Mm and try him, if she wished to do so. In West v. Colquitt, 71 Ga. 559, it was said, “ Of course if the state already has the, man in her power, she cannot make another produce him, nor can she with any sort of justice make that other pay her for not doing what she can'easily do, but the other cannot do at all.” *276 A similar doctrine is announced in The State v. Trahan et al., 31 La. Ann. 715, and Cooper v. The State, 5 Tex. App. 217. It is not only in accord with the best authorities, but with sound reason.
The views here announced are not in conflict with, but rather in accord with, the leading case of Taylor v. Taintor, 16 Wall. (U. S.) 367. In that, it was said, “The law which renders the performance impossible and therefore excuses failure, must be a law operative in the state where the obligation was assumed, and obligatory in its effect upon her authorities.” In the case at bar, it was the state of Colorado which reincarcerated Huston upon another charge, and held him in custody, thereby preventing the sureties in this case from a surrender of their principal in any other manner than that in which it was done. Neither do the views conflict with those expressed by this court in Ayers v. The People, etc., 3 Colo. App. 117. The facts are entirely different and do not bring the case within the rule there laid down. There 'is no pretense that the officer in this case went under the employment of the sureties, or that the proceedings to secure the return of the principal in the bond were had at their instance or request. We do not go to the extent of saying that in no case can the state recover the costs of the arrest and return to custody of the absconding principal in a bail bond, but we do say that such recovery cannot be had under circumstances like those here presented, when it appears that the authorities of the state elected to incur these costs upon an information entirely distinct and separate from those in which the recognizances had been given.
We feel less hesitancy in declaring the judgment erroneous upon the grounds recited in view of the fact that there is enough in the record and pleadings to strongly, if not conclusively, make it evident that the bonds in this case were void. There is an allegation that on June 30, the preliminary examination was had, and that in pursuance of an order then and there made, these bonds were given, but of date September 4. There is no specific allegation that the justice *277 on June 30, made an order of commitment in default of bail being then given as required, but it was his duty to have made such order, and it is presumed that he did. If so, and the prisoner was committed in default of bail, his jurisdiction then ended, and he had no right thereafter to receive and accept, as he did on September 4, a bond. This could only be done by two justices of the peace, or by a judge. Gen. Stats, sec. 981. If it be said that possibly he was released upon bail on June 30, and that the bond of September 4 was a second bond given in lieu of the first one, it is apparent that even in such case this bond was void. The justice had no right to accept it or authorize its acceptance, and under the rule laid down in Rupert v. People, 20 Colo. 424, the recognizance was void, both as a statutory bond, and as a common-law obligation.
The judgment will be reversed.

Reversed.