[L. A. No. 746. In Bank. — July 16, 1901.]

WILLIAM H. GIBBS, Respondent, v. MARY A. TALLY et al., Appellants.

BUILDING CONTRACT — BOND ACCOMPANYING CONTRACT — LIABILITY OF OWNER — CONSTITUTIONAL LAW. — The provision of section 1203 of the Code of Civil Procedure, requiring a building contract to be accompanied by a good and sufficient bond in an amount equal to at least twenty-five per cent of the contract price, for the benefit of any and all persons who perform labor or furnish materials to the contractor, and providing that a failure to comply with such requirement shall render " the owner and contractor jointly and severally liable in damages to any and all material-men, laborers, and subcontractors entitled to liens upon property affected by said contract," places an unreasonable restraint upon the owner of property, in regard to the use thereof, and also an unreasonable and unnecessary restriction upon his power to make contracts, and is, as to such owner, in contravention with the provisions of section 1, article I, of the state constitution, and the fourteenth amendment to the constitution of the United States.

ID. — REGULATION OF POLICE POWER. — Such provision cannot be sustained as a regulation within the police power, as it is not calculated, nor was it intended, to conserve the safety, health, or general welfare of the community.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Clarence A. Miller, for Appellants.

Section 1203 of the Code of Civil Procedure is obnoxious to the provisions of the United States constitution (amendments V, IX, and XIV), and the state constitution (art. I, secs. 1, 13, 23).   (*Latson* v. *Nelson*, 11 Pac. Coast L. J. 589; *Wiggins* v. *Bridge*, 70 Cal. 439; *Wilson* v. *Barnard*, 67 Cal. 423; *O'Donnell* v. *Kramer*, 65 Cal. 353; *Whittier* v. *Hollister*, 64 Cal. 283; *Dore* v. *Sellers*, 27 Cal. 593; *Renton* v. *Conley*, 49 Cal. 185; *Bowen* v. *Aubrey*, 22 Cal. 571; *McAlpine* v. *Duncan*, 16 Cal. 127; *Knowles* v. *Joost*, 13 Cal. 621.)

T. M. Stewart, for Respondent.

Section 1203 of the Code of Civil Procedure is not unconstitutional in substance.   (*Crowley* v. *Christensen*, 137 U. S. 86; *Smith* v. *Newbaur*, 144 Ind. 95; *Cole Mfg. Co.* v. *Falls*, 90 Tenn. 466; *Kiesig* v. *Allspaugh*, 99 Cal. 454.)

TEMPLE, J.—This is an action for damages, against Mrs. Tally, by the assignee of certain persons who had performed labor or furnished materials in the construction of a building, for failing to cause a bond to be filed with the building contract, as required by section 1203 of the Code of Civil Procedure.   A bond was in fact filed, and apparently in good faith designed to comply with the statute, but it was found defective because it was not, "by its terms, made to inure to the benefit of any and all persons who perform labor or furnish materials to the contractor, or any person acting for him or by his authority," "in an amount equal to at least twenty-five per cent of the contract price."

The statute directs that every contract required to be filed by the provisions of the chapter relating to liens of mechanics and others shall be accompanied by a good and sufficient bond, and that any laborer or material-man shall have an action to recover upon the bond for the value of labor and materials, not exceeding the amount of the bond, and such action shall not affect his lien.   A failure to comply with the provisions of the section rendered "the owner and contractor jointly and

severally liable in damages to any and all material-men, laborers, and sub-contractors entitled to liens upon property affected by said contract."

The statute does not say who shall cause this bond to be executed, nor to whom it shall, in form, be made payable. It does not undertake that the contractor shall faithfully perform his contract. In short, there is in it nothing which can be of advantage to the owner, in any possible event. On the other hand, no possible loss will accrue to the contractor by a failure to provide the bond. The declaration that he shall be severally and jointly liable with the owner is useless verbiage. The contractor is already liable for all labor or materials furnished to him or by his authority. The only person, therefore, upon whom a penalty is put for the failure is the owner. He, therefore, and he only, is required to furnish the bond, and, in effect, the bond is conditioned only that the contractor will pay "*such*" persons the value of labor and materials so furnished to him. And the action by a lienor does not affect his lien, or an action commenced for the foreclosure of it.

The section assumes a valid contract, under which, if the contract is performed, the lienors can have the entire contract price distributed to them. But after that has been done, or even before it, a suit can be brought upon the bond, or if it has not been filed, against the owner, to recover an additional twenty-five per cent upon the contract price; and that is this precise case.

The material-men and laborers could have demanded security from the contractor before furnishing materials or labor. The statute attempts to compel the owner to furnish security for them in a matter to which he is not a party and in which he is not concerned. The cost may exceed the contract price, because material-men combine to charge exorbitant prices, or through bad management of the contractor, or because prices have increased since the contract was let, or from other causes.

If this can be required from the owner, it lessens materially the value of his contract; in fact, so far as price is concerned, it deprives him of it. He has no assurance that his house will be built for the stipulated price. There is no more reason for requiring the owner to give this security than there would be in requiring it from any other person in the community.

That the owner may be required to pay more than the contract price is not the only injustice which may result from this

most unreasonable statute. The owner, or the sureties he is required to furnish, would be responsible in case the contractor failed to perform his contract. Suppose the structure failed to comply with the contract,—was in fact so defective as to be useless, and the owner should refuse to pay for it. The very fact that he was injured by the failure of the contractor would create the liability on his part or upon his sureties.

Whether the owner is not the principal on the bond, or the party for whom the sureties undertake, I will not discuss. The undertaking, in effect, certainly is, that the contractor will pay certain debts, if he incurs them, but he is not specially required to furnish the bond, and, as I have stated, incurs no penalty for not doing so, while the owner does.

It is perfectly manifest that this section, if valid, places an unreasonable restraint upon the owner of property, in regard to the use thereof. It compels him to become responsible for liabilities he has not incurred, and which were not created for his benefit. It practically forbids him from improving his property by letting a contract, unless he becomes liable, or furnishes sureties who will be so liable, for twenty-five per cent above the contract price, and for the same amount in case the contractor so far fails in keeping his contract that the labor and materials are without value to him, and the contractor has no valid claim against him on account thereof.

To impose this burden upon an owner is, to some extent, to deprive him of his property, for the value of property consists in the right to use it. Blackstone, in stating the fundamental rights of Englishmen, says: "The third absolute right inherent in every Englishman is that of property, which consists in the free use, enjoyment, and disposal of all his acquisitions without any control or diminution, save only by the law of the land." (1 Blackstone's Commentaries, 138.) And Justice Miller said, in *Pumpelly* v. *Green Bay etc. Co.*, 13 Wall. 166: "There may be such serious interruptions to the common and necessary use of property as will be equivalent to a taking, within the meaning of the constitution." It was said by Judge Comstock in *Wynehamer* v. *People*, 13 N. Y. 378: "When a law annihilates the value of property, and strips it of its attributes, by which alone it is distinguished as property, the owner is deprived of it, according to the plainest interpretation, and certainly within the constitutional provision intended expressly to shield personal rights from the exercise of arbitrary power."

It is also an unreasonable and unnecessary restriction upon the power to make contracts. (See, upon this point, *Butchers' Union etc. Co.* v. *Crescent City etc. Co.*, 111 U. S. 746; *Bertholf* v. *O'Reilly*, 74 N. Y. 509;[1] *Ex parte Jentzsch*, 112 Cal. 468; Cooley's Constitutional Limitations, 48; *In re Tie Loy*, 11 Saw. 472.)

It clearly contravenes the provisions of section 1 of article I of the constitution of the state, and the fourteenth amendment to the constitution of the United States. It is not—and clearly it could not be—contended that this law is a regulation which comes within what is called the police power. It is not calculated, nor was it intended, to conserve the safety, health, or *general* welfare of the community.

The section does not provide for a lien, but it is contended that there is not greater interference with property rights than is found in some of the provisions in regard to liens of laborers and material-men which have been upheld, and particularly in the provision making the contract void in case it is not filed, allowing liens of laborers, material-men, and sub-contractors to the full value of services rendered and materials furnished, although that may exceed the contract price. The constitution directs the legislature to provide for liens of those persons upon the property to the improvement of which they have contributed. It has been held that this extends only to the contract price, which cannot be exceeded. If the contract is not filed as directed, it is void, and there being no contract, it would follow, even though the statute had not said so, that the owner is building himself. In that case, the so-called contractor is (as to other lienors) but the agent of the owner. This would be the natural result, and is not a forced conclusion made by the statute. (*Kellogg* v. *Howes*, 81 Cal. 170, opinion of Justice Fox.) Where there is a valid contract, under which the work was done, and which is performed by the owner, all that the statute attempts to do, and in fact all that can be done, is to enable the laborers, material-men, and sub-contractors to cause the contract price to be applied to the payment of their demands. All that has been held upon this point is, that it is not an unreasonable interference with the rights of the owner, that whatever contract he makes shall be so executed and published that the constitutional policy may

---

[1] 30 Am. Rep. 323.

be carried out. No constitutional policy is back of the provision questioned here.

Our attention is called to the cases of *Mangrum* v. *Truesdale*, 128 Cal. 145, and *Carpenter* v. *Furrey*, 128 Cal. 665. In the first, no question as to the validity of the statute was raised, and the only question discussed was, whether a bond executed after the contract had been filed, and delivered to a loan association, from whom a loan had been negotiated, and not filed with the contract, was a compliance with the law. The liability of the owner in case the bond was not furnished seems to have been admitted. In *Carpenter* v. *Furrey*, 128 Cal. 665, the bond had been given, and the suit was against the sureties. They attacked the validity of the law, upon the grounds, only, —1. That the subject was not expressed in the title of the act; and 2. That it was a special law. These points are not raised in this case.

In this case, I repeat, there was a valid contract, which was performed on both sides. Mrs. Tally has paid out to the lienors, or at least strictly under the provisions of the law, the entire contract price. There has been no technical or other obstruction which has prevented the lienors, or any of them, from getting out of this contract price all to which they were entitled. Having got from Mrs. Tally the entire contract price, they are endeavoring in this suit to compel her to pay twenty-five per cent more because of a mistake made by her or her attorneys in writing the bond. It cannot be done, and the legislature has not the power to require it of her.

The judgment is reversed.

Beatty, C. J., McFarland, J., Henshaw, J., Van Dyke, J., and Garoutte, J., concurred.

Rehearing denied.