CARROLL COUNTY v. E. G. CUTHBERTSON, W. C. MAREAN, E. T. PINNEY and JAMES CAIRNS, Appellants.

**Drainage:** BOND: INVALIDITY. Code, Section 1940, relating to the construction of county drains being unconstitutional, a bond given to secure costs and expenses incurred in case the supervisors refused to grant a petition for the construction of a drain is not enforcible as a common law obligation, for the reason that no benefits accrued and hence no consideration for the obligation.

**Same:** LIABILITY OF PETITIONERS FOR COSTS. The petitioners for a county drainage ditch are not liable to the county for the preliminary expenses incident to the establishment of a drain which were voluntarily paid by the county, where the petition was denied and they were not primarily liable for such expense because of the unconstitutionality of the law under which the proceeding was instituted.

*Appeal from Carroll District Court.*— HON. F. M. POWERS, Judge.

TUESDAY, DECEMBER 10, 1907.

JOHN KOTAS and others filed in the office of the auditor of Carroll county a petition praying for the establishment of a drainage district and ditch under chapter 2 of title 10 of the Code, together with bond as required by law. Subsequently J. Roden and others filed an amendment thereto. With this amendment was filed a bond reciting the filing of the petition, and conditioned for the payment of " all costs and expenses incurred in case the supervisors of Carroll county refuse to grant the petition." This bond was signed by the defendants. Thereafter proceedings were had as prescribed by statute until final hearing on September 5, 1904, when the petition as amended was rejected. The county

paid out costs and expenses, amounting in the aggregate to
$354.30, which defendants have refused to pay.   To the
petition alleging these facts and demanding judgment the de-
fendants interposed a demurrer on the ground " that the
law providing for the giving of several bonds set forth in
the petition herein was at the time of giving said bonds void
and of no effect, and for that reason there was no considera-
tion to uphold such bonds."   The demurrer was overruled,
and defendants electing to stand on the ruling, judgment
was entered as prayed.   The defendants appeal.— *Reversed.*

*Kitt W. Marean* and *Geo. W. Paine,* for appellants.

*Chas. C. Helmer* and *E. A. Wissler,* for appellee.

LADD, J.— The bond sued on was filed in pursuance of
section 1940 of the Code, and was " conditioned to pay all
costs and expenses incurred in case the board of supervisors
refuse to grant the prayer of the petition."   This prayer was
for the establishment of a drainage district and excavation
of a ditch.   Preliminary to a decision by the board, the
statute provided for a survey and report by a competent
engineer, notice to abutting owners, and presentation of
claims for damages; and to assure the payment of the costs
and expenses incident thereto such bond is exacted.   This
statute and those following were declared unconstitutional
after the proceeding in which the bond was given had been
begun, for that they authorized the assessment and levy of
taxes on the land benefited without notice to the owner or
affording an opportunity of being heard.   *Beebe v. Magoun,*
122 Iowa, 94; *Smith v. Peterson,* 123 Iowa, 672.   Appel-
lants, who are the sureties on the bond, now contend, as it
was executed in pursuance of an invalid enactment and they
derived no benefit or advantage therefrom, there should be
no recovery on condition broken.   On the other hand, ap-
pellees insist (1) that the bond should be upheld as valid and

enforceable independent of statute, and (2) that, as it was executed for the purpose and in fact induced the doing of all that was done and the payment of the costs and expenses thereof by the county, the obligors are estopped from setting up the invalidity of the law under which it was given.

Taking up these propositions in the order stated, it is to be said that a statutory bond may be good at common law though insufficient under the statute, if not in violation of law

1. DRAINAGE: bond: invalidity.

or public policy. *Garretson v. Reeder,* 23 Iowa, 21; *Painter v. Gibson,* 88 Iowa, 120. But this is so only when the obligors have, or at least the principal obligor has, derived some benefit or enjoyed some advantage from the giving of the bond. Thus in *Armstrong v. Mayer,* 60 Neb. 423 (83 N. W. 401), the Supreme Court of Nebraska declared a statute authorizing an appeal from the decision of a justice of the peace to the district court in forcible entry and detainer cases unconstitutional because of defect in the title of the act; but in *Stevenson v. Morgan,* 67 Neb. 207 (93 N. W. 180, 108 Am. St. Rep. 629), and *United States Fidelity & Guaranty Co. v. Ettenheimer,* 70 Neb. 147 (99 N. W. 652), appeal bonds executed in pursuance thereof to pay costs and rent of the premises while withheld were enforced as common-law obligations on the ground that the principal obligor had by means thereof retained possession of the premises, and therefore the bonds rested on considerations of their own. Another illustration of this principle is found in *Daniels v. Tearney,* 102 U. S. 415 (26 L. Ed. 187), where the court declared void the Virginia secession ordinance providing that by giving a bond a debtor might prevent the enforcement of execution against him, but sustained an action on the bond given on the ground that the obligor, having enjoyed its benefits by staying execution, was estopped from setting up its invalidity. These decisions are to be distinguished from those for recovery on bonds depending for their consideration solely upon the requirements of statute. The latter uniformly deny liability

whenever the statute for any reason has been declared invalid. Thus in a California case, *Gibbs v. Tally,* 133 Cal. 373 (65 Pac. 970, 60 L. R. A. 815), a statute requiring every contract filed for a mechanic's lien to be accompanied with a sufficient bond conditioned to pay for the value of labor and materials required, and that upon failure to file such bond the owner and contractor be jointly liable, was declared unconstitutional; and in the subsequent decisions of *Shaugnnessy v. Am. Surety Co.,* 138 Cal. 543 (71 Pac. 701), and *San Francisco Lumber Co. v. Bibb,* 139 Cal. 192 (72 Pac. 964), recovery on bonds so given was denied on the ground that these were purely statutory. In *Brookman v. Hamill,* 43 N. Y. 554 (3 Am. Rep. 731), a statute authorizing the attachment of a vessel was declared unconstitutional, and the bond executed in pursuance thereof to release the levy was held invalid, for that the obligor was entitled to the release anyway, owing to the invalidity of the statute authorizing the levy. See, also, *Poole v. Kermit,* 59 N. Y. 554. So in *Byers v. State,* 30 Ind. 47, for recovery on a bond executed to prevent the incarceration of the defendant in a bastardy proceeding, the court denied recovery thereon because the statute requiring it was unconstitutional, saying: " Such a bond is without a valid consideration, and that fact is a bar to an action upon it." But where the bond is not taken in the manner authorized by law nor accepted by a magistrate so authorized, this court is committed to the doctrine that it is enforceable if the prisoner procured his release thereby, on the theory that it was voluntarily executed for his benefit, and he has derived all the advantage which he could have had under a bond taken in the manner prescribed by statute. *State v. Cannon,* 34 Iowa, 322; *State v. Wright,* 37 Iowa, 522. These decisions have been criticised and conclusions to the contrary reached in *Robertson v. Shepherd,* 165 Mo. 360 (65 S. W. 573), and *Dickenson v. State,* 20 Neb. 72 (29 N. W. 184). But see *Dennard v. State,* 2 Ga. 137; *Rupert v. People,* 20 Colo. 424 (38 Pac.

702) (dissenting opinion by Elliott, J.). The distinction is clearly drawn in *Stevenson v. Morgan, supra,* where, after reviewing the decisions, Lobinger, C., says: " The basis of the distinction between these two lines of cases is the consideration. If it exists, the instrument may be enforced like any other contract, and annulment of or departure from a statute providing for it is not fatal. If, on the other hand, the consideration is absent, the instrument, like any other *nudum pactum,* affords no basis of recovery." As the statutes authorizing the construction of the improvement proposed were in conflict with the Constitution, no possible benefit or advantage could have been derived from the execution of the bond or anything done in pursuance of the petition praying for the establishment of the drainage district and the excavation of the ditch. If the board of supervisors ordered the improvement, such order would have been of no efficacy, and no advantage could result to the petitioners or bondsmen from any decision the board might make. No benefits, then, were derived by the defendants by virtue of the execution of the bond, and for this reason it cannot be enforced as a common-law obligation.

II. But appellee argues that the costs and other expenditures were incurred and paid by reason of the filing of said petition, and for this reason the defendants should not be permitted to deny liability on the latter.

2. SAME: liability of petitioners for costs.

The petition in this action does not assert this as a fact, but leaves it to be inferred from allegations of what was done in the way of surveying and giving notice, and the like, in pursuance of the void statute. Had these costs and expenses been charges against the county, were the statutes valid, there would have been much force in this contention. *B. C. R. & N. R. Co. v. Sewart,* 39 Iowa, 267; *City of Burlington v. Gilbert,* 31 Iowa, 356; *Tone v. Columbus,* 39 Ohio St. 281 (48 Am. Rep. 438; *Stewart v. Commissioners,* 45 Kan. 711 (26 Pac. 683, 23 Am. St. Rep. 741). The principle is well estab-

lished that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted.   Such a change, as it involves fraud and falsehood, is sternly forbidden by the law.   But before the principle may be applied it must be made to appear in some way that the party in whose favor it is sought to be applied has been led to do something he would not otherwise have done.   Even had the statutes been valid, the county would not have been liable for any of the costs and expenses incident to the location of the ditch.   Its payment was not in pursuance of any section of the Code, but for all that appears was purely voluntary.   The only Code provision with reference thereto is section 1945:   "The auditor and engineer shall each be allowed for their services such sum as may be fixed by the board of supervisors, and all other fees or costs shall be the same as is provided by law for like services in other cases, and if the county surveyor performs service in relation thereto, the same as is provided by law; all of which, together with damages assessed, shall be paid out of the county treasury from the fund collected for that purpose, upon the order of the county auditor."   In pointing out a fund from which to pay these costs and expenses, doing so from any other fund, by fair implication, was forbidden.   The section following has relation to the collection of such a fund, when the improvement has been ordered, but no provision for payment when rejected is to be found, save by the petitioners for the improvement and the sureties on their bond.   See *Alderson v. St. Charles Co.*, 6 Mo. App. 420.   Doubtless this is for the reason that the power to construct drains is in no proper sense a part of the usual powers conferred on the county government, but is a special authority conferred for a special purpose, such as might be conferred on anybody the Legislature might in its wisdom select.   Drainage is in the interest of the general public, but, as it results in benefits to the owners of land affected,

the burden of paying the cost is cast on the owners of such land. See *Bryant v. Robbins,* 70 Wis. 258 (35 N. W. 545); 2 Farnham, Waters and Water Rights, section 110 *et seq;* *People v. Reclamation Dist. No. 551,* 117 Cal. 114 (48 Pac. 1016). The theory of the statute is that, aside from the interest of the general public, the board of supervisors act in behalf of the landowners affected, and for this reason the county as a whole is not chargeable with the costs incident to the improvements contemplated. In not requiring payment of preliminary expenses by the county our statute seems to have differed from those of some other States. See *Gugisberg v. Eckert,* 101 Minn. 116 (111 N. W. 945); *Spriggs v. State,* 161 Ind. 225 (66 N. E. 693, 67 N. E. 992). And it has been changed since the petition in this case was refused. Chapter 86, Acts 31st General Assembly. The entire proceeding prior to the order directing the improvement was at the risk of the petitioners for the ditch, and the specific object in exacting a bond was the assurance that the petitioners would pay these costs and expenses in event the board of supervisors should refuse the petition. The point is not argued by counsel, but is necessarily involved in the plea that the county was induced to pay the costs and expenses by the defendants in putting the proceedings prescribed by the statute in motion. As this was not so, the court erred in overruling the demurrer to the petition.— *Reversed.*