94 So.2d 355 (1957)
Morris J. GREENBLATT, and Anna B. Greenblatt, his wife, and Lavinia Waldbaum, a widow, Petitioners,
v.
Richard GOLDIN, d/b/a Metro Tile Co., Respondent.
Supreme Court of Florida, En Banc.
April 10, 1957.
Feibelman & Friedman, Miami, for petitioners.
Leo M. Alpert, Miami, for respondent.
Bucklew & Ramsey, Tampa, Wm. A. McRae, Jr., William O.E. Henry, and Holland, Bevis, McRae & Smith, Bartow, as amici curiae.

On Rehearing Granted.[*]
ROBERTS, Justice.
We are here concerned with Chapter 28243, Laws of Florida, Acts of 1953  its meaning and its validity. This Act amended Sec. 84.05(11), Fla. Stat. 1951, of the Mechanics' Lien Law, by adding a subsection (a) thereto and now appears as Sec. 84.05(11) (a), Fla. Stat. 1955, F.S.A. It is applicable to building contracts of $3,000 or more and was described in its title as "provid[ing] for surety bond or alternative method of payment for performance under a contract for the protection of owner, laborer, lienor, subcontractor, materialman and contractor; and properly made payments." It provides in part as follows:
"(a) In the event a direct contract calls for the expenditure of three *356 thousand dollars or more, the owner may require and in such event the contractor shall furnish the owner a surety bond * * * payable to the owner in at least the amount of the original contract price, conditioned to pay all laborers, subcontractors and materialmen. If for any reason the contractor fails to furnish the bond and notwithstanding the provisions of any other section of this chapter, the owner shall not pay any money on account of the direct contract prior to the visible commencement of operations and any amounts so paid shall be held improperly paid, and the owner shall withhold twenty percent of each payment when it becomes due under the direct contract. And in no event shall the owner pay more than eighty percent of the contract price if the bond is not furnished until the contract has been fully performed and final payment is due and the contractor has furnished the owner statement under oath required by § 84.04(3). * * * If for any reason the owner fails to comply with the requirements of this section, he shall be liable for, and the property improved shall be subject to, a lien in the full amount of any and all outstanding bills for labor, services, or materials furnished for such improvement regardless of the time elements set forth in this chapter."
The petitioners, as owners, entered into a written contract with a general contractor for the construction of a residence on their premises. The contract did not require a surety bond and authorized the owner to pay to the contractor 90 percent of the contract price prior to the time when final payment was due. After the owners had paid this amount, the contractor abandoned the contract. The owners then discovered that the contractor had falsified receipted bills in order to obtain progress payments from them and that there were many outstanding bills for materials and services supplied to the contractor for the job. The instant suit was filed by the owners against the contractor and all subcontractors and materialmen claiming a lien against the property, to obtain a decree declaratory of their rights under Sec. 84.05(11)(a), supra, (sometimes referred to as "the Act" hereafter).
The owners contended in the lower court and argue here that the Act should be interpreted as requiring the withholding of 20 percent of the progress payments and contract price only if an owner actually incorporates a bond requirement in his direct contract, and that, in the absence of such a bond requirement, its provisions are not activated. They also attacked the validity of the Act. The lower court held that the Act is applicable to the direct contract here involved and that it is constitutional. A summary decree was entered in favor of one of the lienors, who is the respondent here, for the full amount of his lien "irrespective of the amounts of other liens and irrespective of the amounts of such sums as the Plaintiffs may have paid to the General Contractor." We here review this decree on petition for certiorari filed by the owners.
As to the applicability of Sec. 84.05(11) (a) to the contract here involved, we agree with the lower court that the Act was intended to apply to a contract of $3,000 or more even though no bond requirement was incorporated therein. When read in the light of the purpose expressed in its title, quoted above, it is clear that the Legislature must have intended to give the owner the alternative of (1) seeing to it that his building contract was covered by a performance bond or (2) withholding from his contractor 20 percent of the progress payments and contract price. If the Legislature had intended to require compliance by the owner with the "alternative method of payment" prescribed in the Act only if the owner required and the contractor refused to give a performance bond, as here contended, it would have been a simple matter to add a provision to that effect. The Legislature did not do so and we find *357 nothing in the language of the Act that requires this court to read into it such a provision. Accordingly, we find no error in the lower court's ruling as to the applicability of the Act to the contract here involved.
We now come to the question of the validity of Sec. 84.05(11) (a). As has been noted, the Act provides that "[i]f for any reason the owner fails to comply with the requirements of this section, he shall be liable for, and the property improved shall be subject to, a lien in the full amount of any and all outstanding bills for labor, services, or materials furnished for such improvement regardless of the time elements set forth in this chapter." While some ambiguity is generated by the punctuation, all parties interpret this provision as providing for personal liability on the part of the owner and for a lien on the improved property in the full amount of the outstanding bills for labor or materials, limited only by whatever statutory limitations period would be applicable to such actions. It is the contention of the owners that a statute that compels them to secure a performance bond or in the alternative to withhold 20 percent of the payments as they become due under the contract, and that subjects them to the personal and property liability noted above if they fail to do either, impairs their liberty of contract and subjects them to a penalty that is so unreasonable and unconscionable as to deprive them of their property without due process of law. This contention must be sustained.
Mechanics' lien laws "find sanction in the dictates of natural justice" and in the equitable principle that "every one who, by his labor or materials, has contributed to the preservation or enhancement of the property of another, thereby acquires a right to compensation." Jones v. Great Southern Fireproof Hotel Co., 6 Cir., 1898, 86 F. 370, 385. By the application of this equitable principle, it has become settled law that "[m]aterialmen and laborers may be secured by mechanics' liens upon land improved or affected by their material or labor, and this without reference to technical and ancient concepts of privity of contract. * * * For like reasons they may be secured as against the owner by a lien upon any moneys due to the contractor, and secured as against the contractor by a lien upon any moneys collected from the owner * * *." Hartford Accident & Indemnity Co. v. N.O. Nelson Mfg. Co., 1934, 291 U.S. 352, 54 S.Ct. 392, 395, 78 L.Ed. 840. It has been said, however, that if such legislation "is the mere arbitrary exercise of the powers of government, unauthorized by the established principles of private right, and not having the sanction of natural justice, it is not the law of the land." Jones v. Great Southern Fireproof Hotel Co., supra, 86 F. 370.
Thus, in Gibbs v. Talley, 1901, 133 Cal. 373, 65 P. 970, 971, 60 L.R.A. 815, the court held unconstitutional a statute, Code Civ. Proc. § 1203, requiring a building contract to be accompanied by bond in an amount of at least 25 percent of the contract price, giving laborers and materialmen a right to recover upon the bond for the value of labor and materials supplied by them, and making the owner and contractor "jointly and severally liable in damages to any and all material men, laborers, and subcontractors entitled to liens upon property affected by said contract" upon failure to comply with the bond requirement. The practical effect of this statute was to make the owner personally liable for an additional 25 percent above the contract price if no performance bond was provided. The court said: "It is perfectly manifest that this section if valid, places an unreasonable restraint upon the owner of property in regard to the use thereof. It compels him to become responsible for liabilities he has not incurred, and which were not created for his benefit. * * * To impose this burden upon an owner is to some extent to deprive him of his property, for the value of property consists in the right to use it."
See also Hess v. Denman Lumber Co., Tex.Civ.App. 1920, 218 S.W. 162, 164, where *358 the statute, Vernon's Ann.Civ.St. art. 5453 and note, required a contractor's performance bond and a materialman sued the owner, in tort, for damages in the full amount of his claim, basing his cause of action on the owner's negligent breach of his statutory duty to procure the bond. The court held the statutory provision requiring the bond unconstitutional as an "interference with the law of the liberty of contract."
We have found only one decision upholding a statute that requires a contractor's performance bond and makes the owner personally liable for the claims of subcontractors and materialmen if no such bond is provided. In Rio Grande Lumber Co. v. Darke, 1917, 50 Utah 114, 167 P. 241, L.R.A. 1918A, 1193, the provision of the statute, Laws 1915, c. 91, requiring a bond was attacked as an unconstitutional restraint of the liberty of contract and was upheld by the Utah Supreme Court against such attack, under the authority of Roystone Co. v. Darling, 1915, 171 Cal. 526, 154 P. 15. The Utah court did not, however, discuss the question of whether the penalty of personal liability imposed upon the owner for his failure to secure the bond was valid.
Roystone Co. v. Darling, supra, 154 P. 15, 19, was concerned with a statute, Code Civ.Proc. § 1183, as amended by St. 1911, p. 1313, providing that if the owner required the contractor to furnish a bond in not less than 50 percent of the contract price and the bond was filed with the contract in the recorder's office, then the court in its discretion could limit the recovery of subcontractors' and materialmen's liens to the amount of the contract price; and that if the bond was not provided, then the liens of the subcontractors and materialmen should be "direct and independent of any account of indebtedness between the owner and contractor * * *." The court said it was "unable to perceive any constitutional objection to the expedient of providing that by the execution and filing of such bond the owner may be protected against the delinquencies of his contractor while, at the same time, lien claimants are afforded a security for the payment of their claims." This statute, in effect, established two types of mechanics' liens: a statutory bond lien, and a direct lien against the improvement. Both types of lien claimants are required to perfect their liens in accordance with the provisions of the Mechanics' Lien Law, Hubbard v. Jurian, 1918, 35 Cal. App. 757, 170 P. 1093; and the owner is not subjected to personal liability if he elects not to require a bond, "* * * the only penalty for not doing so being that liens may be perfected for the reasonable value of the work or material furnished without limitation to contract price." Thode v. McAmis, 1950, 96 Cal. App.2d 833, 216 P.2d 548, 551.
It can be seen that the Act here in question goes far beyond the California statute upheld in the Roystone case, supra, under the liberal provision of Sec. 15, Art. XX, of the California Constitution. It makes no attempt to establish the "direct lien" theory of mechanics' liens, which was the avowed purpose of the California statute; it imposes a personal and property liability independently of and without regard to the other provisions of the Mechanics' Lien Law, for the full amount of all outstanding bills, as a penalty against the unwary or negligent owner who fails to comply with the other requirements of the Act. Manifestly, such a penalty cannot be justified under the mandate of Sec. 22 of Art. XVI of the Florida Constitution, F.S.A., that "The Legislature shall provide for giving to mechanics and laborers an adequate lien on the subject matter of their labor." In our opinion, it is "the mere arbitrary exercise of the powers of government, unauthorized by the established principles of private right, and not having the sanction of natural justice * * *." Jones v. Great Southern Fireproof Hotel Co., supra, 86 F. 370.
In a petition for rehearing filed by the respondent-lienor and in briefs filed with the court's permission on behalf of amici curiae, it is suggested that the question *359 of whether the Legislature may validly impose a personal liability and a lien against the improved property "regardless of the time elements" set forth in the Mechanics' Lien Law (referred to hereafter as the "personal liability" and "time element" clauses), as a penalty against the owner, is not before this court, since no personal liability was claimed and the respondent's lien was perfected in accordance with the provisions of the Mechanics' Lien Law. It is also argued that the personal liability and time element clauses, if invalid, may be stricken from the sentence of the Act in question and leave a valid provision imposing upon the owner's property "a lien in the full amount of any and all outstanding bills for labor, services, or materials furnished for such improvement", if the owner fails to comply with the other requirements of the Act. It is not necessary to decide whether this would be a valid provision, since we do not think the sentence is severable under the rule adopted by this court in State v. Calhoun County, 126 Fla. 376, 170 So. 883, 886. It was there said that the court may eliminate invalid clauses "where it appears that the elimination of such clauses would not destroy the main and essential features of the act and the portion left is a completed and workable statute and where it cannot be said that the Legislature would not have enacted the remaining portions of the act without the invalid clause which is stricken."
It may well be that, if it had known that the personal liability and time element clauses would be held invalid, the Legislature would have provided that subcontractors and materialmen could perfect a lien under the Mechanics' Lien Law against the owner's property in the full amount of their outstanding bills, if the owner failed to comply with the other provisions of the Act. But it did not do so. It intended to and did provide for a personal and property liability against the owner entirely outside the scope of the Mechanics' Lien Law. These provisions are void, and the legislative purpose has failed for the reasons before stated. When the personal liability and time element clauses fail, the entire sentence of which they are an integral part must also fail because the part remaining is not a valid expression of the Legislative will. Cf. Ex parte Smith, 100 Fla. 1, 128 So. 864, holding an entire ordinance invalid because the objectionable clause was an integral part of the ordinance and could not be separated from it without doing violence to the intention of the council.
Accordingly, we hold unconstitutional and void the following provision of Sec. 84.05(11) (a): "If for any reason the owner fails to comply with the requirements of this section, he shall be liable for, and the property improved shall be subject to, a lien in the full amount of any and all outstanding bills for labor, services, or materials furnished for such improvement regardless of the time elements set forth in this chapter."
The deletion of the penalty clause carries with it the remainder of Sec. 84.05(11) (a), under the rule of State v. Calhoun County, supra, quoted above. This is so because the portion left is not a "completed and workable statute" unless we assume that the Legislature intended that the other and previously existing provisions of the Mechanics' Lien Law respecting "properly paid" payments by the owner should be applied in determining the rights of lienholders against the owner on account of improper payments made under the Act, should the penalty provision therein prescribed be held invalid. This would be pure conjecture on our part, since there is nothing in the Act to evince such an intention. Moreover, the existing provisions do not provide a clear answer to some of the questions that might arise under the remainder of the Act. For example, if the owner failed to withhold 20 percent of a progress payment, would he be answerable to the lienholders for the full amount so paid or only 20 percent thereof? The existing provisions were not intended to and do not provide an answer to that question.
*360 For the reasons stated, we hold that Chapter 28243, Laws of Florida, Acts of 1953, appearing as Section 84.05(11) (a), Fla. Stat. 1955, F.S.A., is void and of no effect. Accordingly, certiorari is granted, the order here reviewed is quashed, and the cause remanded for further proceedings in accordance with the opinions herein expressed.
It is so ordered.
TERRELL, C.J., and O'CONNELL, J., and GILLIS, Associate Justice, concur.
THOMAS and HOBSON, JJ., concur in part and dissent in part.
HOBSON, Justice (concurring in part and dissenting in part).
I agree that the provision of Sec. 84.05(11), F.S. 1955, F.S.A., which apparently creates personal liability on the part of the owner for "all outstanding bills * * * regardless of the time elements set forth in this chapter" is invalid in that it transcends the constitutional mandate that "the Legislature shall provide for giving to mechanics and laborers an adequate lien on the subject matter of their labor." Consequently, I am of the opinion that the following words appearing in the last sentence of Sec. 84.05(11) (a), F.S. 1955, F.S.A., to-wit: "shall be liable for, and * * * regardless of the time elements set forth in this chapter" should be held void and of no effect.
In my opinion that portion of Sec. 84.05 (11) (a) providing that "if for any reason the owner fails to comply with the requirements of this section, he shall be liable for, and the property improved shall be subject to, a lien in the full amount of any and all outstanding bills for labor, services, or materials furnished for such improvement regardless of the time elements set forth in this chapter" should not be held invalid in toto.
I hold the view that the provision for a lien in the "full amount" of any and all outstanding bills is not so harsh and oppressive as to warrant a determination by this court of invalidity, because the act provides a method whereby the owner may avoid the penalty set forth in the law by requiring the contractor to furnish the owner a surety bond payable to the owner in at least the amount of the original contract price, conditioned to pay all laborers, sub-contractors and materialmen, or in the alternative follow the requirements for withholding 20% of each payment due under the contract, taking precaution that such payments are "properly paid" as defined in Sec. 84.05.
In my judgment this act is invalid only insofar as it provides for personal liability against the owner for any and all outstanding bills regardless of the time elements set forth in F.S. Ch. 84, F.S.A.
The owner is entitled to the protection afforded by the "time element" which requires a lienor to file his claim within three months after the final performance of labor or service or the furnishing of materials, F.S. Sec. 84.16, F.S.A., and the further requirement that no lien shall continue for a longer period than one year after the claim is filed, unless an action to enforce it is commenced within that time, F.S. Sec. 84.21, F.S.A. Clearly these provisions do not contravene the mandate of the constitution that mechanics and laborers shall have adequate liens on the subject matter of their labor. An owner has the right to know within three months after all work is completed on his property that he can deliver title to it, free and clear of mechanics' liens, instead of being relegated to the protection of a general statute of limitations. To hold otherwise would, in my opinion, play havoc with the sale of property and would be unduly harsh, oppressive and unreasonable.
I would grant the petition for certiorari and declare invalid only those portions of the act detailed above. By so doing the *361 last sentence of Sec. 84.05(11) (a) would read as follows: "If for any reason the owner fails to comply with the requirements of this section the property improved shall be subject to, a lien in the full amount of any and all outstanding bills for labor, services or materials furnished for such improvement." This proviso together with the remaining portions of the legislative act would, in my judgment, constitute a "completed and workable statute".
I deem it appropriate to restate the observation which was made by this court in the case of Allstate Pipe Supply Co. v. McNair, 89 So.2d 774, 775, when, in speaking through Mr. Justice O'Connell, we said:
"There is nothing to be gained in condemning or applauding the Mechanics' Lien Law for it is the law of this State. Admittedly it is harsh in many respects, as applied to an owner, and no one improving property can ignore its provisions without coming to grief."
THOMAS, J., concurs.
NOTES
[*] Prior opinion vacated and withdrawn.