KING, Judge.
The issues presented by this appeal are whether or not the trial court was correct in upholding the constitutionality of Louisiana’s Private Works Act and whether or not the trial court was correct in including Louisiana Sales Taxes in the amounts that can be recovered under the Louisiana Private Works Act.
C.J. Richard Lumber Company, Inc. (hereinafter the plaintiff) instituted this suit to enforce a materialman’s lien filed by it pursuant to the Louisiana Private Works Act, LSA-R.S. 9:4801 et seq., (hereinafter the Act) for materials sold by it to Harold Melancon, d/b/a Harold Melancon Painting (hereinafter the contractor) to be used for the improvement of the home and property of Vernon and Karlene Bell (hereinafter the defendants). Judgment was rendered by default in favor of plaintiff and against the contractor. Defendants filed an answer, a reconventional demand for a declaratory judgment that the law upon which plaintiff based its claim was unconstitutional, and a third party demand against the contractor for any sums they might be ordered to pay to plaintiff on the main demand. After a trial on the merits, the trial judge recognized and maintained the plaintiff’s materialman’s lien, and rendered a money judgment on the main demand in favor of the plaintiff and against the defendants and on the third party demand in favor of the defendants and against the contractor.
The defendants appeal the judgment rendered in favor of the plaintiff and against them and argue that the trial court erred in (1) not holding unconstitutional the Louisiana Private Works Act, LSA-R.S. 9:4801 et seq.; and (2) including sales taxes in the amount recoverable under the Act by the plaintiff from the defendants. We affirm.
FACTS
Defendants entered into a written contract for improvements to their home with the contractor. The written contract provided that the contractor was to make cer *1020 tain improvements on the defendants’ home for a total price of $7,838.28 and additionally provided: “All labor and materials furnished.” The defendants did not avail themselves, as permitted by the Act, to obtain a bond from the contractor nor did they cause their written construction contract and a bond to be filed, as also permitted by the Act.
During the month of August, 1982, the contractor purchased building construction materials from the plaintiff for use on the home of defendants. These materials were either delivered by plaintiff to the defendant’s property or were picked up at plaintiff's store by the contractor or his representatives and taken to the defendants’ property. All of these materials were then used by the contractor in constructing improvements on the home of the defendants.
The contractor continued the work on defendants’ home until sometime in September, 1982 at which time the contractor discontinued work and failed to repair leaks in the roof of the defendants’ home. The defendants then had to hire another contractor to complete the job and fix the leaking roof of their home.
When payment for the materials was not made by the contractor, the plaintiff timely filed a materialman’s lien asserting its privilege against the defendants’ property, pursuant to LSA-R.S. 9:4801 and 9:4822, for the cost of the materials it sold to the contractor which were used in making the improvements to the defendants’ home. This lien was recorded on October 14, 1982 in St. Martin Parish, Louisiana, where the defendants’ property is situated. Notice of this lien and demand for payment were sent to the defendants, which they received on October 16,1982. Notice of the lien and demand for payment were again sent to the defendants, which they received on February 2, 1983. Notice of the lien and demand for payment were also made by plaintiff on the contractor.
After receiving no response from either the contractor or the defendants, the plaintiff filed suit on March 17, 1983 against both the contractor and the defendants seeking a money judgment and to enforce the privilege arising from its materialman’s lien. Plaintiff also filed a Notice of Lis Pendens in the records of St. Martin Parish, Louisiana on March 18, 1983. No Answer or other responsive pleadings were timely filed by the contractor and a Preliminary Default Judgment was taken against him by plaintiff, which was later confirmed on June 10, 1983. The defendants answered the plaintiff’s petition by an answer of general denial, raising as an affirmative defense that the law on which plaintiff based its claim was unconstitutional, and also filed a Reconventional Demand seeking a declaratory judgment that LSA-R.S. 9:4801 and 9:4802 are unconstitutional, as violative of the Fourteenth Amendment to the United States Constitution. The defendants also included with their Answer a third party demand against the contractor, praying that the contractor be held liable to the defendants for any amounts they might be cast in any judgment rendered against them in favor of the plaintiff in the main demand and for other sums they had been required to pay on account of the contractor’s default.
After a trial on the merits, judgment was rendered on the main demand in favor of plaintiff and against the defendants (1) recognizing the materialman’s lien; and (2) holding the defendants liable to plaintiff in the amount of $3,042.77, which was the price of the materials sold and sales tax, with legal interest thereon from October 14, 1982, the date of the filing of the mate-rialman’s lien, together with the sum of $43.00 as the cost of recording the materi-alman’s lien. Judgment was also rendered rejecting the defendant’s reconventional demand to have the Louisiana Private Works Act declared unconstitutional. Judgment was rendered in favor of the defendants on their third party demand against the contractor for the sum of $3,085.77, subject to a credit of $2,296.22, with legal interest thereon from date of judicial demand, until paid. All costs were assessed against the defendants on the main demand, and against the contractor on the third party *1021 demand. The defendants subsequently timely perfected this devolutive appeal from the judgment rendered against them.
UNCONSTITUTIONALITY OF THE ACT
The defendants first contend that inasmuch as LSA-R.S. 9:4801 and 9:4802 impose personal liability on an owner of property for failure to exact a bond from his contractor, the Louisiana Private Works Act violates their right to equal protection of law under the United States Constitution and deprives them of their property without due process of law.
LSA-R.S. 9:4801 provides in relevant part:
“The following persons have a privilege on an immovable to secure the following obligations of the owner arising out of a work on the immovable:

(3) Sellers, for the price of movables sold to the owner that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.” LSA-R.S. 9:4801.
LSA-R.S. 9:4802 provides in relevant part:
“A. The following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract:
* * * * * *
(3) Sellers, for the price of movables sold to the contractor, or a subcontractor that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.
# * Jjc * # *
B. The claims against the owner shall be secured by a privilege on the immovable on which the work is performed.
C. The owner is relieved of the claims against him and the privileges securing them when the claims arise from the performance of a contract by a general contractor for whom a bond is given and maintained as required by R.S. 9:4812 and when notice of the contract with the bond attached is properly and timely filed as required by R.S. 9:4811.” LSA-R.S. 9:4802
In analyzing the constitutionality of § 4801 and § 4802 of the Act, this Court is cognizant of the general rule that every statute is presumed to be constitutional unless and until the contrary is clearly established. Jones v. Davis, 233 So.2d 310 (La.App. 2nd Cir.1970); City of Lake Charles v. Henning, 414 So.2d 331 (La.1982) and cases cited therein. State laws are generally entitled to a presumption of validity against attack under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Parham v. Hughes, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (U.S.1979) and eases cited therein. As a result, one who claims a violation of due process of law must show that the statute in question exceeds the bounds of reasonableness because it is arbitrary or oppressive. City of Lake Charles v. Henning, supra and cases cited therein. In determining whether or not there has been a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the issue is whether the treatment of some people differently is supported by any rational basis reasonably related to the governmental interest sought to be advanced by such treatment. Everett v. Goldman, 359 So.2d 1256 (La.1978); Parham v. Hughes, supra, and cases cited therein. Consequently, before this Court invalidates § 4801 and § 4802 of the Act as being violative of the Fourteenth Amendment to the United States Constitution, it must first be shown that § 4801 and § 4802 of the Act are arbitrary or oppressive, or not supported by any rational basis reasonably related to the governmental interest sought to be advanced by these statutes.
*1022 No Louisiana court has apparently considered the validity of the Act under the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution. See Annot., “Owner-Liability-Labor and Material,” 59 A.L.R.2d 885, 893 (noting that the Louisiana Private Works Act, including the statutes imposing personal liability on owners, has been applied in various cases but that its validity has never been decided).
As a general rule, statutes giving a lien on property in favor of subcontractors, ma-terialmen, and laborers have been held constitutional. 59 A.L.R.2d 885, supra, at 886. In addition, it appears that statutes that merely permit rather than require an owner to exact a bond from a contractor for the purpose of limiting the owner’s liability for liens are valid. 59 A.L.R.2d 885, supra, at 887.
In support of their contention that the Act is unconstitutional, the defendants rely on the early California case of Gibbs v. Talley, 133 Cal. 373, 65 P. 970 (1901). There the Court invalidated a California statute which required the filing of a bond with the construction contract and provided that a failure to comply with this requirement of law would make the owner and contractor solidarily liable in damages to any laborer and materialman entitled to liens upon property affected by the construction contract. In Gibbs, suit was brought by an assignee of laborers and materialmen against the owner of a building under construction for damages for failure to cause a proper bond to be filed with the building contract, as required by the- statute. The gist of this decision declaring the statute unconstitutional was that to allow recovery as damages for all labor and material liens, where there was a valid contract between the owner and contractor, would make the owner liable for an amount in excess of the contract price for which he had not agreed to pay, thereby impairing the contract and imposing an additional requirement or burden upon the contracting parties that had no connection or relation to the state’s constitutionally provided mechanic’s lien. In interpreting this same statute Gibbs was followed in subsequent decisions by the California courts.
After the decision in Gibbs and the cases following it, California amended the statute in question to provide that an owner could require a bond from his contractor, rather than requiring the owner to obtain and file a bond under penalty of liability, in order to not be personally liable for all laborer’s and materialmen’s liens, and providing that in such instances recovery against the owner was limited to the amount due under the construction contract. The California Supreme Court, in Roystone Co. v. Darling, 171 Cal. 526, 154 P. 15 (1915), upheld the constitutional validity of this statute. The court recognized that this statute did not impair or deprive the owner of his right to contract for improvements on his property and did not have any direct relation to the validity or invalidity of the construction contract.
In further support of their allegation that LSA-R.S. 9:4802 is unconstitutional, the defendants have cited the Texas case of Hess v. Denman Lumber Co., 218 S.W. 162 (Tex.Civ.App.1920), and the Florida case of Greenblatt v. Goldin, 94 So.2d 355 (Fla.1957). Both of these cases held invalid the imposition of personal liability on the owner of property for liens, because of the owner’s failure or negligence to exact a bond from a contractor as a surety for liens as required by the applicable state statute.
The courts in Gibbs, Hess, Greenblatt and other cases interpreting similar state statutes, when the state statute compels an owner to secure a bond and record the contract and bond and, if he fails to do so, impose on the owner personal liability for labor and material for failure to comply with the statute, have held such statutes unconstitutional for the reasons that such statutes impair the liberty of contract and subject the owners to penalties that are so unreasonable as to deprive them of their property without due process of law. It should be noted that the state statute in *1023 such cases compelled property owners, contracting for improvements on their property to obtain bonds from their contractors to protect those claiming for labor and material furnished and that the statutes provided that the failure to comply with the statute itself resulted in the liability of owners and their property for labor and material furnished. Such state statutes are different from the statutes of Louisiana.
The Louisiana Private Works Act is not compulsory and does not require the property owner to secure a bond from the contractor to protect those furnishing labor and material in connection with construction on the owner’s property. It merely permits an owner of property to escape personal liability for the cost of labor and materials furnished to his contractor for use on the property if the owner voluntarily chooses to obtain a bond and to record the construction contract along with the bond. We are unable to perceive any constitutional objection to the expediency of providing that by the execution of a contract and bond and the filing of such contract and bond the owner may be protected against the delinquencies of his contractor while, at the same time, lien claimants are afforded a security for the payment of their claims. The State of Louisiana clearly has an interest in promoting construction within the state by protecting laborers and materialmen for their just claims and the privileges for labor and materials are justified upon the ground that the labor and material, for which the right to claim the lien is provided, have been converted into the property so that the property owner has been enriched at the expense of another. For this reason we cannot say that the Act is “arbitrary or oppressive,” City of Lake Charles v. Henning, supra, or “unsupported by a rational basis reasonably related to the governmental interest sought to be advanced by it,” Everett v. Goldman, supra. Since property owners may absolve themselves from personal liability, if they choose to do so, by simply recording the construction contract along with a sufficient bond, we do not regard the Act which permits such action on the part of the owner as depriving the property owner of equal protection of the law.
The defendants additionally contend that the Act violates their rights to procedural due process under the Fourteenth Amendment in that the Act allows imposition of a lien on property without prior notice and a hearing. In support thereof, the defendants cite two non-Louisiana cases; Barry Properties, Inc. v. Fick Bros. Roofing Co., 211 Md. 15, 353 A.2d 222 (1976), and Roundhouse Construction Corp. v. Telesco Masons Supplies Co., Inc., 168 Conn. 371, 362 A.2d 778 (1975), vacated and remanded, 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29 (1975), reaffirmed, 170 Conn. 155, 365 A.2d 393 (1976), cert. denied, 429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). Both, Barry and Roundhouse invalidated a state statute providing for a mechanic’s lien, which statutes were similar to the Louisiana Private Works Act, as being violative of the Fourteenth Amendment’s guarantee of procedural due process.
The defendants’ rights to procedural due process in this case can be held to have been violated only if the filing of the mate-rialman’s lien constitutes a taking or deprivation of property. U.S. Const. Amend. XIV, § 1. Defendants argue that the filing of a lien under the Act resulted in a taking of their property under Louisiana law without due process. In the United States Supreme Court cases, from which the law governing debtors’ pre-judgment due process rights has evolved, the “taking” which resulted from the creditor’s pre-judgment action was evident. The debtor was totally and actually dispossessed of the possession, use and enjoyment of his property by the creditors’ pre-judgment action. See e.g. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); Chrysler Corp. v. Fedders Corp., 670 F.2d 1316, 1321 (3rd Cir.1982); North Georgia Finish *1024 ing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).
The filing of a lien against property in Louisiana creates a cloud on the title to the subject property. Lafayette Woodworks v. Boudreaux, 255 So.2d 176 (La.App. 1st Cir.1971); Ragsdale v. Hoover, 353 So.2d 1132 (La.App. 2nd Cir.1977).[1]
The question presented is whether under Louisiana law the mere filing of a lien against property constitutes a deprivation or taking of a significant property interest such as to deny the property owner due process of law.
The United States Supreme Court has spoken only indirectly on liens by its summary affirmance of Spielman-Fond, Inc. v. Hanson’s, Inc., 379 F.Supp. 997 (D.Ariz.1973), aff'd, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation of doctrines previously announced by the High Court. Fusari v. Steinberg, 419 U.S. 379, 391, 392, 95 S.Ct. 533, 541, 42 L.Ed.2d 521 (1975) (Burger, C.J., concurring). A summary affirmance is, nonetheless, a decision on the merits, having precedential value. Hicks v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975).
In considering whether the filing of a mechanic’s lien against real property, filed pursuant to Arizona’s mechanics’ lien law, constituted a taking of a significant property interest, the court in Spielman-Fond, observed:
“[Hjere, a lien is filed against the property and clouds title. It cannot be denied that the effect of such lien may make it difficult to alienate the property. If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction. Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate has not been harmed, and the difficulties which the lien creates may be ameliorated through the use of bonding...” Spielman-Fond, Inc. v. Hanson’s, Inc., 379 F.Supp. 997, at page 999 (D.Ariz.1973), aff’d 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974).
In accord with Spielman-Fond is the case of Bankers Trust Co. v. El Paso Pre-Cast Co., 560 P.2d 457 (Colo.1977), in which the Colorado Supreme Court held that a mechanics’ lien filed pursuant to Colorado statutory law did not constitute a deprivation of property of constitutional dimensions. We agree with the rationale of the Spielman-Fond and Bankers Trust cases, supra. We therefore conclude that the filing of a materialman’s lien against the defendants' property by plaintiff without prior notice or a hearing, pursuant to LSA-R.S. 9:4822, did not deprive the defendants of their Fourteenth Amendment rights to procedural due process of law because there has been no taking of a significant property interest.
Reiterating the general rule of Louisiana law that statutes are presumed to be constitutional and with this presumption in mind, we cannot say that the Act is viola-tive of defendants’ constitutional rights to equal protection under the law or denies defendants’ due process of law.
For the reasons given above we do not find that the Louisiana Private Works Act *1025 is unconstitutional as denying defendants equal protection of the law or depriving defendants of due process of law under the United States Constitution.
RECOVERY OF SALES TAX UNDER THE ACT
The defendants also allege on this appeal that the trial court erred in including sales taxes in the amount recoverable by plaintiff. The defendants assert that sales taxes should be analogized to attorney’s fees in disallowing the recovery of sales taxes under LSA-R.S. 9:4802.
Louisiana law requires that the seller collect sales taxes on sales of materials or goods. LSA-R.S. 47:304(C) provides:
“C. Dealers shall, as far as practicable, add the amount of the tax imposed under this chapter in conformity with the schedule or schedules to be prescribed by the collector pursuant to authority conferred herein, to the sale price or charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts. Any dealer who neglects, fails or refuses to collect the tax herein provided, shall be liable for and pay the tax himself.” LSA-R.S. 47:304(C).
As dealers of merchandise are statutorily required to collect sales taxes, we conclude that plaintiff should not be made to bear the loss attributable to sales taxes on materials sold and used in improving the defendants’ home and on which plaintiff is statutorily required to pay sales tax to the taxing authority. The statute specifically authorizes a dealer to add the tax to the sales price which shall be a debt owed to the dealer from the purchaser or consumer until paid. The defendants are the ultimate consumer of the materials sold by the plaintiff to the contractor. Plaintiff is here suing both the contractor (purchaser) and defendants (consumers) for the debt (sales price for materials and sales taxes). We therefore uphold the correctness of the trial court’s inclusion of sales taxes in the amounts which are recoverable under LSA-R.S. 9:4802.
For the foregoing reasons, the judgment of the trial court is affirmed. Defendants-appellants are assessed with all costs of this appeal.
AFFIRMED.

. Act 711 of the Regular Legislative Session of 1985, effective September 6, 1985 adds further support to the concept that the filing of a lien does nothing more than create a cloud on the subject property. Act 711, which amends LSA-R.S. 9:4833(F), provides:
"The effect of filing for recordation of a statement of claim or privilege and the privilege preserved by it shall cease as to third persons unless a notice of lis pendens identifying the suit required to be filed by R.S. 9:4823 is filed within one year after the date of filing the claim or privilege. In addition to the requirements of Article 3752 of the Code of Civil Procedure, the notice of lis pendens shall contain a reference to the notice of contract, if one is filed, or a reference to the recorded statement of claim or privilege if a notice of contract is not filed.”