KANNER, Chief Judge.
This appeal, interlocutory in nature, inquires whether the filling station of appellant, Sinclair Refining Company, is subject to enforcement of a mechanic’s lien because of failure, under the trial court’s interpretation, to comply by its contract with the builder or otherwise with the statutory withholding provision.
Suit was brought under the contention that the requisite of section 84.05(11) (a), Florida Statutes, F.S.A., for the withholding by the owner of 20 per cent of each periodic payment due the building contractor had not been complied with. After the suit had been filed, appellant entered a cross-complaint, bringing into the suit other unpaid subcontractors and materialmen by permission of the court. This cross-complaint was dismissed by the court upon motion of one of the lien claimants thus brought into the suit, and it is from this determination that the appeal has been instituted. The trial court held that the direct contract here involved required progress payments of 80 per cent of the value of work completed at any particular time, that the statutory requirement necessitated the withholding of 20 per cent of these curtailed payments, and that appellant had not so performed.
The pertinent segment of section 84.05 (11) (a) reads as follows:
“If the owner fails to require or if for any reason the contractor fails to furnish the bond and notwithstanding the provisions of any other section of this chapter, the owner shall not pay any money on account of the direct contract prior to the visible commencement of operations and any amount so paid shall be held improperly paid, and the owner shall ¡with-. hold twenty per cent of each payment when it becomes due under the direct contract. In no event shall the owner pay more than eighty per cent of the contract price if the bond is not furnished until the contract has been ful *584 ly performed and final payment is due and the contractor has furnished the owner statement under oath required by § 84.04(3). If the statement recites any outstanding bills for labor, services or materials, or if the owner has knowledge of any, the owner shall pay such bills in full direct to the person or firm to whom they are due, if the balance due on the contract is sufficient, and deduct the amounts so paid from the balance due the contractor. If the balance due on the contract is not sufficient to pay all bills in full, the owner shall pay no money to anyone until such time as the contractor has furnished him with the difference. In the event the contractor fails to furnish the difference the owner shall determine the amount due each laborer, lienor, materialman or subcontractor and shall disburse to them the amounts due by him on the contract in accordance with the order of liens established herein. In the event the improvement is abandoned prior to completion, the owner shall follow the above procedure and disburse the funds withheld by him before commencing completion of the improvement. When the bond is not furnished nor the twenty per cent of each payment withheld and disbursed as required by this subsection, the property improved shall be subject to a lien in the full amount of any and all outstanding bills for labor, services, or materials furnished for such improvement; provided a claim of lien is filed of record within three months as required by § 84.16, and action to enforce it is commenced within one year from date of filing, in accordance with § 84.21, or the lienor has been made a party defendant in an action involving the real property described in the claim of lien within the same period of time and upon disposition of such action the lienor’s claim shall be discharged.”
A contract was entered into between the appellant and the Richard H. Smith Construction Company, Inc., for the building of a filling station for the sum of $23,180, later increased during construction to $23,-830. Under paragraph seventeen of the contract, it was provided that:
“17 Terms: Invoices shall be rendered on the final day of each month for 80% of the value of work performed, less amounts previously invoiced, payable net 10 days; balance due and payable net 30 days after acceptance of completed work by Sinclair.
“A list of correct names and addresses of all materialmen and subcontractors engaged by Contractor shall be submitted not later than 15 days prior to completion of work.”
Pursuant to this contract provision, progress payments of the amounts due were made by the appellant company on the basis of 80 per cent of the gross amount under each invoice as determined from the overall contract price and the percentage of work completed. This was done under four invoices presented periodically by the construction company, containing the following information:
Date Gross Amount 80% Thereof Less Previous Payment Amount Due
1. 9/20/57 $ 6,954.00 $ 5,563.20 $ $5,563.20
2. 9/30/57 14,298.00 11,438.40 5,563.20 5,875.20
3. 10/22/57 19,064.00 15,251.20 11,438,40 3,812.80
4. 11/20/57 22,638.50 18,110.80 15,251.20 2,859.60.
*585 Thus, appellant paid the amount of these invoices in the sum of $18,110.80, representing 80 per cent of the value of work done at the stage of completion shown by the fourth invoice.
Prior to time for final payment but after the work had been completed, appellant required and obtained pursuant to section 84.04(3), Florida Statutes, F.S.A., an affidavit from the construction company, and this document revealed a deficiency in payments of claims to subcontractors and ma-terialmen in the amount of $11,733.46, upon receipt of which information appellant declined to make further payment.
It may be noted that as against this deficiency of $11,733.46, appellant had retained the sum of $5,719.20, or 24 per cent of the total amount of the contract. This represented the 20 per cent remainder left after the 80 per cent payments had been made, plus the remaining amount due under the contract on completion of the work.
In considering the contention of the appellant that the 20 per cent withholding requirement of the statute had been incorporated into the contract and that the statute had been complied with, we find it necessary first to examine comparatively the pertinent provisions of the statute and of the contract in determining whether the trial court erroneously found to the contrary.
The owner, under the language of section 84.05(11) (a), is required to “withhold twenty per cent of each payment when it becomes due under the direct contract”; further, “In no event shall the owner pay more than eighty per cent of the contract price * * * until the contract has been fully performed and final payment is due and the contractor has furnished the owner statement' under oath required by § 84.04 (3).” It is observed that this provision requires no statement from the contractor enumerating unpaid lienors prior to the time that final payment becomes due; yet the statute contemplates progress payments.
Primarily, we may comment that the title of the enacting statute, Chapter 57-302, Laws of Florida, 1957, refers to the act as “providing for surety bond or alternative method of payment for performance under a contract for the protection of owner, laborer, lienor, subcontractor, material-man and contractor; and properly made payments.” The title of the act itself identifies its purpose as being for the protection of the classes designated. The statute specifies the retention of 20 per cent of each payment due under the direct contract. The retention of 20 per cent of progress payments based on the full value of the work performed as related to and measured by the contract would result in payment of no more than the statutorily limited 80 per cent of the contract price by the time the work is completed and final payment is due, at which time the contractor is required to furnish the affidavit enumerating unpaid lienors. Thus, a protective 20 per cent fund from the amounts due at any particular time is set up as a safeguard.
We have found no case decisive of the point in issue, but we may here make reference to the case of Lehman v. Snyder, Fla.1956, 84 So.2d 312, 313, which contains a persuasive feature compatible to the problem here involved, although concededly the applicable statement of opinion in that case is a dictum. The Lehman case involved a claimant who had executed a receipted bill and a release of his claim. After the transaction was closed and the contractor’s check returned for insufficiency of funds, a claim of lien was filed against the property involved showing nonpayment of a lumber bill and alleging that the owner had failed to comply with the requirements of section 84.05(11) (a), in that periodic payments were made by the bank without retaining 20 per cent of each payment as required by statute. The Supreme Court expressed itself in the following manner:
“We find it unnecessary to pass upon the sufficiency of the bond for the *586 reason that it appears from the record that in actuality the owners have met the requirements of the cited statute where no bond is required and that the failure of the materialman to receive payment for the lumber furnished by him resulted from his own doings.
‡ «1» $ •i' ‡
“After this transaction was closed and the contractor’s check was returned for insufficiency, Lehman filed a ‘claim of lien’ against the property involved, claiming nonpayment of its lumber bill and alleging failure of the owner to comply with the requirements of F.S. Section 84.05(11) (a), F.S.A., in that he contends that periodical payments were made by the bank without retaining twenty percent of each payment as required by the statute. The provision relied upon by appellant is as follows:
“ ‘ * * * If for any reason the contractor fails to furnish the bond * * * the owner shall withhold twenty percent of each payment when it becomes due under the direct contract.’ This same section, however, continues as follows, to-wit:
“ ‘And in no event shall the owner pay more than eighty percent of the contract price if the bond is not furnished until the contract has been fully performed and final payment is due and the contractor has furnished the owner statement under oath required by § 84.04(3). * * *
“The exhibits filed by appellant reveal that, out of a total commitment of $8,126.43 to cover the cost of construction, the bank had a balance available in the amount of $1,904.06 when final settlement was made by the owners with the contractor through the bank. While it is true that the bank made three disbursements on the account to the contractor without apparently retaining twenty percent of each, the fact remains that when the job was completed and the time for final payment arrived the owner through its agent, the bank, had actually withheld more than twenty percent of the contract price and would have been in a position to meet the demand of appellant, at least pro tanto but for the receipted bill and release of the lien executed by appellant himself.
“Eliminating the claim of the plaintiff this retained amount was adequate to liquidate the balance due the several subcontractors listed in the contractor’s statement under oath. The owners and the bank had a right to rely upon the release of lien executed by Lehman in making the final disbursements. They did so rely in absolute good faith and in doing so, they closed out the account with the contractor and apparently paid off the remaining lienholders. So far as the owners and the bank were informed, Lehman had been paid in full and had cancelled the lien with the result that the effect given to the ‘cautionary notice’ by the statute was eliminated. The appellees Snyders rely on various equitable maxims to support the decree of the Chancellor. However, they all add up to the conclusion that having executed the release and the receipted bill and having led the owners and the bank into making the final settlement in reliance upon the release, the ma-terialman Lehman cannot now be heard to disclaim the effect of the release and assert a lien for the unpaid amount due for the materials furnished. The Chancellor so ruled and he was correct in so doing.”
We glean from the opinion that the bank had made three payments without the retention of 20 per cent of each, but that when the time for final payment arrived the bank had in fact withheld more than 20 per cent of the overall contract price. The court stated that the owners actually had fulfilled the requirements of the stat *587 ute involved where no bond is furnished, but the failure of the materialman to receive payment resulted from his own acts.
In the present case there was incorporated in the contract a requirement for retention of 20 per cent of the value of the work performed at any particular time through the provision that invoices could be submitted for only 80 per cent of such value. These invoices showed the gross amount involved under each stage of completion and the calculated 80 per cent thereof as the amount due at each particular time. The figure which resulted as payable in the final column of the invoice under appellant’s method of procedure is the same figure which would have resulted had the contract provided for withholding- 20 per cent of the gross instead of providing that the invoice should be for only 80 per cent of the gross. To follow the interpretation of the lower court would require retention of 36 per cent of the contract price under the case here presented, and we again emphasize that the appellant had actually withheld 24 per cent of the overall contract amount when final payment became due. We must recognize that the 20 per cent withholding provision must be considered in connection with the complete section, particularly with that portion specifying an 80 per cent statutory limitation on overall payment of the contract price until the contract is fully performed, final payment is due, and the contractor has furnished the required statement under oath. Consequently, the end result of the payments made by the appellant under the contract provision attained the purpose of the statute, and this conclusion is supported by the dictum contained in the case of Lehman v. Snyder, supra.
The action of the court below in dismissing appellant’s cross-complaint was erroneous and is hereby reversed with instructions for further procedure in conformity to this opinion.
Reversed.
ALLEN and SHANNON, JJ., concur.