ALLEN, WILLIAM P., Chief Judge.
This is an interlocutory appeal from an order granting in part a motion by appel-lee-plaintiffs, as mechanic lien claimants, for summary judgment holding appellant-defendants liable to plaintiffs for the difference between the down payment and the original construction contract price plus extras.
The appellants, as owners of the property, entered into a contract with Hubert B. Severs which provided in part:
“I hereby propose to build this home for the sum of 18,285.00. This home is to be built as specified in list of specifications, and to plans that have been submitted to this date of November 1, 1957.
“From this date November 1, 1957, any change in plans specifications there will be an additional charge of time, material plus 10% is on time and material.
“Down Payment Will Be As Follows :
“Over and above Bank Loan.
“s/ Plubert B. Severs
“General Contractor
“s/ Henry J. Karwisch
“Owner
“s/ Rose C. Karwisch
“s/ Grace G. Cooper”
When the home was completed, certain extras in the amount of $828 were added to the original contract price of $18,285 making a total of $19,113 which sum is not disputed by any of the parties.
At various times during the progress of the construction, the owners made several payments to the contractor. When the home was completed, there remained unpaid on the contract $5,480.32. The owners requested a sworn statement, as required by the Mechanics Lien Law, from the contractor setting forth that all subcontractors had been paid, or naming those who had not been paid and the amounts. After the *39 contractor refused to furnish this statement, the owners placed the amount due under the contract, being $5,480.32, in escrow with Winter Park Federal Savings & Loan Association to be used for the payment of amounts owing to the subcontractors and materialmen.
The appellee-lien claimants filed liens in the total amount of $8,077.04 and brought suit against the owners to enforce these liens. In their complaint the claimants incorporated the above quoted contract therein by reference to it as exhibit “A”. We note that there is another document also marked exhibit “A” which appears to be a list of extras furnished on the contract dated March 25, 1958, and at the bottom of this sheet the following appears:
“Final Payment On Home $5300.00
“Total On Above Changes 635.82
“Balance Due $5935.82
80.00
“s/H. J. Karwisch 5855.82
“s/G. H. Cooper 375.00
' “Owners ' ' 5480Í82
“s/Hubert B. Severs
“General Contractor”
The owners filed their answer alleging that the $5,424.82 that they had placed in escrow represented the amount due on the contract. The claimants then filed their motion for summary judgment.
The lower court entered an order holding:
“1. The full amount of the contract price, plus extras, became due and payable upon completion of the house and that amount less the down payment constitutes final payment as contemplated by section 84.05(11) (a) Florida Statutes [F.S.A.], as interpreted in Renaurt [Renuart] Lumber Yards, Inc. v. Edward A. Stearn, Fla.1957, 95 So.2d 517.
“2. That the plaintiffs and defendant Parker Lumber Co., Inc. are entitled to enforce their liens in the aggregate up to the amount of the final payment as aforesaid, and are not limited to the actual amount remaining in the hands of the owners.”
The chancellor then reserved ruling as to the actual amount of each lien pending proof of the validity and amounts thereof.
The decisive issue in this appeal is whether the lower court erred in holding that the final payment, against which claimants could enforce their liens, is the difference between the down payment and the full contract price, plus extras. As noted previously, the contract did not provide for progress payments and, in fact, the only figure mentioned is the full contract price of the home. A down payment is mentioned but only to the extent that it shall be the difference between the contract price and a bank loan.
In Renuart Lumber Yards, Inc. v. Stearn, Fla.1957, 95 So.2d 517, 518, which the lower court cited as authority for its ruling and is relied upon by appellees in this court, the contract involved provided for a down payment of 10 per cent, a progress payment of 40 per cent and the remaining 50 per cent to be paid upon final inspection. The full contract price was $11,000. At various times prior to the completion of the job, the owner had paid all except $2,400 to the contractor without having obtained a statement under oath from the contractor that all lienors had been paid as required by sec. 84.04(3), Fla.Stat.1955, F.S.A. The Court held that 50 per cent of the contract price, or $5,500, was subject to the unpaid liens even though only $2400 remained in the owner’s hands. In so holding, the Court alluded to several prior decisions which held that failure to obtain the sworn statement from the contractor as required by sec. 84.04(3), supra, before making final payment, would cause such payment to be considered not “properly paid” as the term is defined in sec. 84.05 Fla.Stat.1955, F.S.A., and that the owner would be responsible to *40 unpaid subcontractors and materialmen to the amount of such final payment even though no cautionary notices had been filed by them. The Court then stated in reference to these prior decisions:
“The clear import of such decisions is that the true ‘final payment’ as contemplated by the statute is that specified in the contract. See Curtis v. McCardel [Fla.], supra, 63 So.2d 60.”
The case of Flood v. Clark, Fla.App.1959, 111 So.2d 465, 466, involved an issue similar to the instant question before this court. The contract in question in the Flood case was a printed form contract which contained printed spaces that related to progress payments which were all left blank except for the phrase “according to the terms of the escrow agreement attached hereto and initialed by the parties and becomes a part of this agreement.” The escrow agreement provided that 30 per cent would be withheld until the subject construction was completed. An alleged oral agreement between the developers and the contractor that the final payment would be reduced to 20 per cent was contended by the developers to be the true contractual understanding between the parties. The chancellor had refused this contention and held that the 30 per cent specified in the escrow agreement was the true final payment. In upholding this ruling of the chancellor, the District Court of Appeal, Third District, stated:
“Had the printed contract been silent on the subject of progress payments, it might be said that the contract was incomplete and failed to state all of the terms. The parol agreement between developers and Shinn to withhold 20% would have been admissible.”
Construing the contract in the instant case in connection with the above cited cases is most difficult due to the manner in which the instant contract has been drafted. Aside from the contract, the second document attached to the complaint and also identified as “Exhibit A” is not an alleged extraneous agreement, but to the contrary, is a document, signed by the owners and the contractor, purporting to show the cost of extras that had been incorporated into the construction and also the final balance due as of March 25, 1958. Inasmuch as the original contract provided that any extras added after November 1, 1957, would result in additional charges over and above the contract price for time, materials and 10 per cent on time and materials, it would appear that this accounting statement was contemplated by the parties and by signing such have manifested an intent that such be binding between them. As has been shown previously, this document showing the list of extras also set forth the balance due as $5,480.82. Thus it would appear that this document would be some evidence of the intent of the parties as to “final payment” inasmuch as the original contract was silent as to “final payment” or progress payments.
Aside from the original contract and the document covering extras and balance due, there is no other evidence before this court from which the clear intent of the parties can be ascertained. Apparently the difference between the contract price and the bank loan was paid. But the amount is not shown from the record nor is the amount and terms of the bank loan disclosed. It may well be, as is the custom in such construction loans, that certain disbursements to the contractor were provided for in the loan contract upon various stages of the construction being completed.
In view of the holdings of the cases cited herein that “final payment” shall be that which is specified by the parties in their contract, and due to the uncertainty and lack of clarity in the instant contract, this court is of the opinion that the lower court erred in ruling as a matter of law that the final payment was to be the balance over and above the down payment. Accordingly, the order granting the summary judgment is reversed with directions that testimony and evidence be adduced to establish the complete contractual undertaking of the *41 parties. We note in passing that section 84.05(11) (a), Florida Statutes, F.S.A., was not interpreted in Renuart Lumber Yards, Inc. v. Stearn, supra, as stated in the lower court’s order, but on the contrary, that section of Florida Statutes was expressly declared by the Supreme Court in the Renuart case to have been held void and of no effect in Greenblatt v. Goldin, Fla.1957, 94 So.2d 355, 59 A.L.R.2d 877, and therefore, of no benefit to appellant in the Renuart case. Section 84.05(11) (a), Florida Statutes, F. S.A., has since been re-enacted with the objectionable portion deleted and was construed by this court in Sinclair Refining Co. v. J. H. Cobb, Inc., Fla.App. 1959, 112 So.2d 582.
For the reasons assigned herein the cause is reversed and remanded for further proceedings not inconsistent with this opinion.
Reversed.
KANNER and SHANNON, JJ., concur.