STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-808

BATON ROUGE PRESS, INC.

VERSUS

DONNA J. ANDRIES, ET AL.

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 204,044,
HONORABLE B. DEXTER RYLAND, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Arthur J. Planchard[*], Judges.

AFFIRMED.

Thomas R. Temple, Jr.
Breazeale, Sachse & Wilson, L.L.P.
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
(225) 387-4000
Counsel for Plaintiff/Appellant:
 Baton Rouge Press, Inc.

Stephen D. Wheelis
Wheelis & Rozanski
Post Office Box 13199
Alexandria, Louisiana 71315-3199
(318) 445-5600
Counsel for Defendant/Appellee:
 Want Ads of Alexandria

---

[*]Judge Arthur J. Planchard, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore*.

**Amanda Wood Barnett**
**Attorney at Law**
**Post Office Box 6118**
**Alexandria, Louisiana   71307**
**(318) 445-6471**
**Counsel for Defendant/Appellee:**
**        Donna J. Andries**
**        Rapides Parish Sales & Use Tax Department**

SULLIVAN, Judge.

Baton Rouge Press, Inc. (Baton Rouge Press) appeals the dismissal of its suit against Want Ads of Alexandria (Want Ads) to recover sales taxes that it paid under protest as the result of its business transactions with Want Ads. For the following reasons, we affirm.[1]

## Discussion of the Record

Baton Rouge Press, a printing business located in East Baton Rouge Parish, prints a publication known as the "Thrifty Nickel Want Ads" on behalf of Want Ads, which is located in Rapides Parish. After printing the publication in Baton Rouge, Baton Rouge Press delivers it to Rapides Parish, where it is distributed by Want Ads.

On April 18, 2001, Donna J. Andries, Sales Tax Administrator for the Rapides Parish Sales and Use Tax Department (the Department), issued a final assessment to collect $44,614.48 in sales taxes, interest, and penalties against Baton Rouge Press for its failure to collect sales taxes on its transactions with Want Ads between February 1998 and November 2000. Baton Rouge Press paid the assessment under protest, then filed this suit for a refund against the Department and Want Ads. In its petition, Baton Rouge Press first disputed that it owed any taxes, alleging (1) that Want Ads' publication is either a newspaper or catalogue exempt from taxation under La.R.S. 47:305(D)(1)(e) and/or La.R.S. 47:305.49 and (2) that Baton Rouge Press had no obligation to collect the taxes because its only contact with Rapides Parish was delivery of goods within the taxing jurisdiction. In the alternative, Baton Rouge Press alleged that, should it owe the taxes, then La.R.S. 47:304(C) allows it to recover them from Want Ads.

---

[1]This opinion does not address Baton Rouge Press's claim against Donna J. Andries, Sales Tax Administrator for the Rapides Parish Sales and Use Tax Department.

Want Ads filed an exception of no cause of action and failure to state a claim upon which relief can be granted, arguing (1) that it is not liable for any taxes under La.R.S. 47:304(C) because it is a "purchaser or consumer" rather than a "dealer" and, in the alternative, (2) that the statute makes no provision for reimbursement of a tax in favor of a dealer that neglects, fails, or refuses to collect the tax. After taking the matter under advisement, the trial court granted Want Ads' exception without issuing reasons for judgment.

## Opinion

"The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading." *Pittman v. Beebe*, 95-1342, p. 4 (La.App. 3 Cir. 3/6/96), 670 So.2d 761, 763, *writ denied*, 96-882 (La. 5/10/96), 672 So.2d 931. "The court reviews the petition and accepts well-pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought." *Id.* An appellate court considers the granting or denial of an exception of no cause of action *de novo* because the exception presents a question of law. *Ewing v. Armstrong World Indus., Inc.*, 02-918 (La.App. 3 Cir. 2/19/03), 846 So.2d 813.

Baton Rouge Press argues that, as a "dealer" under La.R.S. 47:301(4), it may recover directly from Want Ads, a "purchaser or consumer," any sales tax that it should have collected and may owe the Department, as provided in the first sentence of La.R.S. 47:304(C):

> Dealers shall, as far as practicable, add the amount of the tax imposed under this chapter in conformity with the schedule or schedules to be prescribed by the collector pursuant to authority conferred herein, to the sale price or charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts. Any dealer who neglects, fails or refuses

2

to collect the tax herein provided, shall be liable for and pay the tax himself.

In support of its position, Baton Rouge Press cites *C. J. Richard Lumber Co., v. Melancon*, 476 So.2d 1018 (La.App. 3 Cir.), *writ denied*, 478 So.2d 1236 (La.1985), in which we held that Section 304(C) authorized the recovery of state sales tax by a materialman who sought to enforce a lien under the Private Works Act against a homeowner whose contractor had defaulted on the payment of materials that were used in improving the home. Relying on the first sentence of Section 304(C), we reasoned:

> As dealers of merchandise are statutorily required to collect sales taxes, we conclude that plaintiff should not be made to bear the loss attributable to sales taxes on materials sold and used in improving the defendants' home and on which plaintiff is statutorily required to pay sales tax to the taxing authority. The statute specifically authorizes a dealer to add the tax to the sales price which shall be a debt owed to the dealer from the purchaser *or consumer* until paid. . . . We therefore uphold the correctness of the trial court's inclusion of sales taxes in the amounts which are recoverable under LSA-R.S. 9:4802.

*Id.* at 1025.

Want Ads, however, distinguishes *C. J. Richard Lumber Co.* from the present case by pointing out that the "dealer" in that case, the materialman, collected the tax at the time of sale, whereas Baton Rouge Press, the "dealer" here, did not. This distinction, Want Ads argues, triggers the second sentence of Section 304(C): "Any dealer who neglects, fails or refuses to collect the tax herein provided, *shall be liable for and pay the tax himself.*" (Emphasis added.) Want Ads' interpretation of the statute is based upon the first circuit case of *Southland Oil Co. v. Jenkins Bros. Asphalt Co., Inc.*, 563 So.2d 1238 (La.App. 1 Cir.), *writ denied*, 568 So.2d 1054 (La.1990). In *Southland*, a "dealer" from Mississippi admittedly "under billed" or did not add Louisiana sales tax to the price of asphalt purchased by a Louisiana company.

3

The first circuit held that, under those circumstances, the Mississippi dealer could not recover against the Louisiana purchaser the sales taxes that it had paid pursuant to a state audit after the transaction:

> Under the provisions of LSA-R.S. 47:304 C, Southland, a dealer that failed to collect the Louisiana tax, was liable itself for payment of the tax. *Regardless of the obligation that the statute imposes upon purchasers, the statute mandates that dealers collect the taxes or pay the taxes themselves. Thus, payment by a dealer who fails to collect from his purchaser is payment of the dealer's debt, not the purchaser's debt. Principles of subrogation and/or indemnity do not apply.*

*Id.* at 1239 (emphasis added) (footnote omitted).

In reaching this conclusion, the first circuit discussed both the language of Section 304(C), as well as the policies supporting such an interpretation:

> In our opinion the language of subd. C is clear and unambiguous; we must apply the last sentence as it is written. LSA-C.C. art. 9. *The interpretation that the trial court made of the first sentence of subd. C, regarding the buyer's obligation to the dealer, destroys the meaning of the last sentence, regarding the dealer's obligation to the State.* We cannot presume that the legislature inserted meaningless language into the statute. *Bunch v. Town of St. Francisville*, 446 So.2d 1357 (La.App. 1st Cir.1984).
>
> . . . .
>
> Nor does our reading of subd. C reveal a legislative intent to allow the dealer to collect from the purchaser *after the dealer has paid the tax which he failed to collect contemporaneously with the purchase price.* If the legislature had so intended, a provision for indemnification could have been written in. We realize this interpretation of LSA-R.S. 47:304 C differs from the result in *American Cast Iron Pipe Co. v. Volentine,* 191 So.2d 661 (La.App. 2d Cir.1966), the case followed by the court below. *But the opinion in Volentine fails to specify whether or not the dealer was chargeable with an act or omission sufficient to trigger the second sentence of subd. C.* To the extent that our opinion conflicts with *Volentine,* we decline to follow the decision of our brethren of the second circuit.
>
> Furthermore, when coupled with the rationale of *Volentine,* the realities of the marketplace provide disparate opportunities for redress for dealers. In the case of some businesses, such as the contractor's and materialman's businesses involved in the instant litigation, records are kept of transactions, *enabling actions against purchasers long after the*

*completed sales*. But in the case of most other businesses, such as retailers, records of transactions usually are unavailable. If we were to interpret LSA-R.S. 47:304 C as the second circuit has done, absurd consequences would flow, with some dealers able to recoup their funds and others relegated to their own pockets. Business cannot function within, and the law cannot sanction, such a lack of uniformity and certainty.

*Id.* at 1239-40 (emphasis added).

The Rapides Parish sales tax ordinance also has a section that parallels La.R.S. 47:304(C). The ordinance, however, appears consistent with *Southland*, in that its language more directly links the dealer's right to recover from the purchaser to the adding of the tax to the purchase price. Rapides Parish Code Sec. 23-28 (4.03) provides:

> The dealer shall, as far as practicable, add the exact amount of the tax imposed under this article, or the average equivalent thereof, in conformity with the rules and regulations to be issued by the collector, to the sale price or charge, and *when added*, such tax shall constitute a part of such price or charge and shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law, in the same manner as other debts. *Any dealer who shall neglect, fail or refuse to collect the tax herein provided shall be liable for, and pay the tax himself.*

(Emphasis added.)

Baton Rouge Press seeks to distinguish *Southland* because the first circuit noted in that case that the taxing authority was not a party to the litigation and that the dealer acquiesced in the assessment rather than paying by protest, two factors that are present here. However, we do not find these distinctions material to the question before us. The presence of the Department and the payment under protest concern Baton Rouge Press's demand for a refund from the Department, and not whether the statute or ordinance affords Baton Rouge Press a right to proceed against Want Ads. Based upon the *Southland* decision and the language of the parish ordinance, we find that the trial court correctly granted Want Ads' exception of no cause of action.

5

**Decree**

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Appellant, Baton Rouge Press, Inc.

**AFFIRMED.**